## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
## BECKLEY DIVISION

| | | |
|---|---|---|
| **WILLIAM C. PUMPHREY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Civil Action No. 5:15-14430** |
| | ) | |
| **JOE COAKLEY, *et al.*,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before the Court is Defendants' "Motion to Dismiss, or in the Alternative for Summary Judgment" (Document No. 44), filed on February 12, 2016. The Court notified Plaintiff pursuant to Roseboro v. Garrison, 528 F.2d 304 (4th Cir. 1975), that Plaintiff had the right to file a response to Defendants' Motion and submit Affidavit(s) or statements and/or other legal or factual material supporting his claims as they are challenged by the Defendants in moving to dismiss. (Document No. 46.) Plaintiff filed his Response in Opposition on April 15, 2016. (Document No. 56 and 57.) Having examined the record and considered the applicable law, the undersigned has concluded that Defendants' Motion should be granted.

## FACTUAL AND PROCEDURAL HISTORY

On October 28, 2015, Plaintiff, acting *pro se* and an inmate at FCI Beckley, filed his Complaint in this matter for alleged violations of his constitutional and civil rights pursuant to Bivens v. Six Unknown Federal Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 24 L.Ed.2d 619 (1971).[1] (Document No. 2 and 2-1.) Plaintiff names the following as

---

[1]   Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer and therefore, they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

defendants: (1) Joe Coakley, Warden; (2) O. Gibson, Special Housing Unit Lieutenant; (3) J.D. James, Correctional Officer; (4) J. Bailey, Correctional Officer; (5) B. Coleman, Correctional Officer; (6) T. Toney, Correctional Officer; (7) D. Duncan; (8) C. Spencer, Correctional Officer; (9) A. Lester, Correctional Officer; (10) F. Riffle, Correctional Officer; (11) C. Honaker, Correctional Officer; (12) S. Denny, Correctional Officer; (13) J. Grogan, Correctional Officer; (14) D. Akers, Correctional Officer; (15) Unit Manager Snow; (16) Dr. Weaver, Psychologist; (17) J. Ford, Correctional Officer; (18) J. Williams, Correctional Officer; (19) E. Harvey, Correctional Officer; (20) Correctional Officer Head; (21) Unit Manager Smith; and (22) Correctional Officer Knoll. (Id.) Specifically, Plaintiff alleges that Defendants subjected him to cruel and unusual punishment. (Document No. 2-1.) First, Plaintiff alleges that Defendant Coakley "ordered his subordinates to conspire to systematically torture [Plaintiff] using an elaborate system of devices to play repeated parts of irritating, nonsensical music." (Id., p. 4.) Plaintiff contends that the music was "played over and over, twenty-four hours a day, seven days a week, at varying volumes." (Id.) Plaintiff further explains that a "soundtrack is played simultaneously that sometimes overlap the music with unearthly moans and groans, gun fire, explosions, children screaming in pain and terror." (Id., p. 5.) Plaintiff alleges that the foregoing keeps him "on edge and [his] nerves frayed" and "exacerbates serious pre-existing health issues." (Id.) Specifically, Plaintiff contends that he is suffering from the following: sleep deprivation, stomach distress (pain, burning, bowel incontinence, sporadic vomiting), debilitating headaches, short-term memory loss, and early dementia-like symptoms. (Id., p. 6.)

Plaintiff contends that Defendant Coakley and Gibson "are the architects and orchestrators of this bizarre and illegal behavior." (Id., pp. 5, 7 - 8.) Plaintiff claims that Defendant Gibson "controls and operates the devices that play the audio soundtracks throughout his workday and

2

upon his departure, he leaves orders and instructions for his confederates to do likewise." (<u>Id.</u>) Plaintiff further explains that Defendant Gibson "has on more than one occasion tried to have [Plaintiff's] wheelchair taken." (<u>Id.</u>) Plaintiff contends that Defendant Gibson comes to his "door numerous times a day to beat, bang and/or kick it." (<u>Id.</u>, p. 7.) Plaintiff alleges that these actions have caused him "to clench [his] jaw throughout the day and grind [his] teeth at night" resulting in the loss of eleven fillings. (<u>Id.</u>) Plaintiff further contends that his "headaches and spinal pain" are exacerbated by Defendant Gibson's deliberate actions. (<u>Id.</u>) Finally, Plaintiff asserts that Defendant Gibson threatens his physical safety, tampers with his food, tampers with his mail, and intentionally "wrecks his cell" during shake downs. (<u>Id.</u>, pp. 7 - 10.)

Plaintiff alleges that Defendants James, Bailey, Coleman, Toney, Duncan, Spencer, Lester, Riffle, Honaker, Denny, Grogan, Ford, Williams, Head, and Smith conspire with Defendant Gibson to cause Plaintiff physical, psychological and emotional harm by engaging in above described conduct. (<u>Id.</u>, pp. 10 - 19, 23 - 25.) Plaintiff further states that Defendant James, Spencer, and Riffle placed Plaintiff's life in imminent danger by spreading false rumors that Plaintiff is a child molester. (<u>Id.</u>, pp. 11, 16 and 18.) Plaintiff complains that Defendant James makes "unwanted sexual innuendoes and overtones while [Plaintiff] is in the shower." (<u>Id.</u>, pp. 11 - 12.) As to Defendant Coleman, Plaintiff further alleges that Defendant Coleman entered his cell and hit Plaintiff in the face without just cause. (<u>Id.</u>, p. 14.) Plaintiff contends that Defendant Coleman's improper action caused swelling and bruising to Plaintiff's face and eye. (<u>Id.</u>) As to Defendant Harvey, Plaintiff further claims that Defendant Harvey verbal threatens him, intentionally injures Plaintiff's wrists when placing handcuffs on him, and intentionally injures Plaintiff's lower extremities when pushing him through the prison in his wheelchair. (<u>Id.</u>, p. 24.)

Plaintiff contends that Defendants Akers, Snow, and Weaver are aware of the cruel and

3

unusual behavior of the foregoing Defendants, but fail to take any corrective action. (Id., pp. 20 - 22.) Plaintiff contends that Defendant Akers tampers with his mail and interferes with his attempts to exhaust his administrative remedies. (Id., p. 20.) Plaintiff claims that although Defendant Weaver is aware of the "torturous conduct" by the foregoing Defendants, Defendant Weaver "deliberately makes a false diagnosis" to cover up the inappropriate conduct. (Id., p. 22.) Plaintiff requests monetary damages and injunctive relief.[2] (Id., p. 27.)

By Order entered on December 16, 2015, United Magistrate Judge R. Clarke VanDervort granted Plaintiff's Application to Proceed Without Prepayment of Fees and directed the Clerk to issue process.[3] (Document No. 6.) On February 12, 2016, Defendants filed their "Motion to Dismiss, or in the Alternative Motion for Summary Judgment" and Memorandum in Support. (Document Nos. 44 and 45.) First, Defendants argue that "Plaintiff failed to exhaust his administrative remedies on any of his allegations." (Document No. 45, pp. 13 – 19.) Second, Defendants contend that "Plaintiff's claim that staff used an elaborate system of devices to torture him by sending irritating music, moans, screams and gunfire sounds into his cell through the vents fails to state a claim, lacks merit, and should be stricken." (Id., pp. 19 – 21.) Third, Defendants assert that "Plaintiff's claim of being struck by Officer Coleman fails to state a claim and lacks merit." (Id., pp. 21 – 23.) Fourth, Defendants claim that "Plaintiff's additional claims fail to state a claim, lacks merit, and should be stricken. (Id., pp. 23 – 26.) Fifth, Defendants argue that

---

[2] Plaintiff is no longer incarcerated at FCI Beckley.

[3] By Standing Order, this matter was referred to United States Magistrate Judge R. Clarke VanDervort for submission of proposed findings of fact and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (Document No. 5.) By Order entered on January 6, 2016, the above case was referred to the undersigned United States Magistrate Judge for submission of proposed findings of fact and a recommendation for deposition pursuant to 28 U.S.C. § 636(b)(1)(B). (Document No. 40.)

"Plaintiff cannot recover for emotional or psychological damages without a showing of physical injury." (Id., pp. 26 – 27.) Sixth, Defendants contend that they are entitled to qualified immunity. (Id., pp. 27 – 29.) Finally, Defendants argue that this "Court should revoke Plaintiff's IFP status based on his litigious misconduct." (Id., pp. 30 – 31.)

As Exhibits, Defendants attach the following: (1) The Declaration of Sharon Wahl (Document No. 44-1, pp. 2 – 4.); (2) A copy Plaintiff's "Inmate Discipline Data Chronological Disciplinary Record" as of January 25, 2016 (Id., pp. 6 – 8.); (3) A copy of the Discipline Hearing Officer Report dated March 30, 2015, regarding Incident Report No. 2692130 (Id., pp. 10 – 12.); (4) A copy of the Incident Report charging Plaintiff with Insolence in violation of Prohibited Act Code 312 (Incident Report No. 2733279) and Supporting Memo (Id., pp. 14 - 16.); (5) A copy of Plaintiff's Injury Assessment dated August 14, 2015 (Id., pp. 18 – 19.); (6) A copy of Registered Nurse ["RN"] Jeff Reports' Memorandum dated August 14, 2015, regarding Plaintiff's Injury Assessment (Id., p. 21.); (7) A copy of Plaintiff's "Administrative Remedy Generalized Retrieval" from March 11, 2015 through December 28, 2015 (Id., pp. 23 – 29.); (8) A copy of the PACER Civil Party Search for Plaintiff (Id., p. 31.); (9) The Declaration of Dr. Jason Weaver (Id., pp. 33 – 37.); (10) A copy of Plaintiff's pertinent BOP psychological records (Id., pp. 39 – 79.); (11) The Declaration of Odie Gibson (Id., pp. 81 – 83.); (12) A copy of a Memorandum from SIA A. Hussion dated August 14, 2015, regarding Inmate Pumphry (Id., p. 85.); (13) The Declaration of Christopher Head (Id., pp. 87 – 88.); (14) The Declaration of Declaration of Anthony Hussion (Id., pp. 90 – 92.); (15) A copy of a Memorandum from SIA A. Hussion dated August 14, 2015, regarding Inmate Pumphry (Id., pp. 94 - 95.); (16) The Declaration of Danny Akers (Id., pp. 97 – 98.); (17) The Declaration of Franklin Riffle (Id., pp. 100 - 101.); (18) The Declaration of Jeremy James (Id., pp. 103 – 104.); (18) The Declaration of Jason Bailey (Id., pp. 106 – 107.); (19) The

Declaration of Buck Coleman (Id., pp. 109 – 110.); (20) The Declaration of Taylor Toney (Id., p. 112.); (21) The Declaration of Dallas Duncan, Jr. (Id., p. 114.); (21) The Declaration of Charles Spencer, IV (Id., pp. 116 - 117.); (22) The Declaration of Aaron Lester (Id., p. 199.); (23) The Declaration of Charles Honaker (Id., p. 121.); (24) The Declaration of Samuel Denny (Id., p. 123.); (25) The Declaration of Jeremiah Grogan (Id., p. 125.); (26) The Declaration of James Ford (Id., p. 127.); (27) The Declaration of John Williams (Id., p. 129.); (28) The Declaration of Eric Harvey (Id., p. 131.); (29) The Declaration of Joe Coakley (Id., p. 134.); (30) The Declaration of Derek Smith (Id., pp. 136 - 137.); (31) The Declaration of Michael Snow (Id., pp. 139 - 140.); and (32) A copy of Plaintiff's "Judgment in a Criminal Case" as filed in the United States District Court for the District of New Mexico in Case No. 1:09-cr-01746 (Id., pp. 142 – 148.).

Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on February 16, 2016, advising him of the right to file a response to Defendants' "Motion to Dismiss, or in the Alternative for Summary Judgment." (Document No. 48.) On April 15, 2016, Plaintiff filed his Response and Memorandum in Support. (Document No. 56 and 57.) As Exhibits, Plaintiff attached the following: (1) A copy of Plaintiff's pertinent medical records (Document No. 56-1, p. 1 - 2.); (2) A copy of "Plaintiff's Response to Declaration of Odie Gibson" (Id., pp. 3 – 8.); (3) A copy of "Plaintiff's Response to Declaration of Christopher Head" (Id., pp. 9 – 11.); (4) A copy of "Plaintiff's Response to Declaration of Anthony Hussion" (Id., pp. 12 – 15.); (5) A copy of "Plaintiff's Response to Declaration of Danny Aker" (Id., pp. 16 – 17.); (6) A copy of "Plaintiff's Response to Declaration of Franklin Riffle" (Id., pp. 18 – 19.); (7) A copy of "Plaintiff's Response to Declaration of Buck Coleman" (Id., pp. 20 – 21.); (8) A copy of "Plaintiff's Response to Declaration of Taylor Toney" (Id., p. 22.); (9) A copy of "Plaintiff's Response to Declaration of Dallas Duncan, Jr." (Id., p. 23.); (10) A copy of "Plaintiff's Response

to Declaration of Charles Spencer, IV" (<u>Id.</u>, p. 24.); (11) A copy of "Plaintiff's Response to Declaration of Arron Lester" (<u>Id.</u>, p. 25.); (12) A copy of "Plaintiff's Response to Declaration of Charles Honaker" (<u>Id.</u>, p. 26.); (13) A copy of "Plaintiff's Response to Declaration of Samuel Denny" (<u>Id.</u>, p. 27.); (14) A copy of "Plaintiff's Response to Declaration of Jeremiah Grogan" (<u>Id.</u>, p. 28.); (15) A copy of "Plaintiff's Response to Declaration of James Ford" (<u>Id.</u>, pp. 29 - 30.); (16) A copy of "Plaintiff's Response to Declaration of John Williams" (<u>Id.</u>, p. 31.); (17) A copy of "Plaintiff's Response to Declaration of Eric Harvey" (<u>Id.</u>, pp. 32 - 33.); (18) A copy of "Plaintiff's Response to Declaration of Joe Coakley" (<u>Id.</u>, pp. 34 - 35.); (19) A copy of "Plaintiff's Response to Declaration of Derek Smith" (<u>Id.</u>, pp. 36 – 37.); (20) A copy of "Plaintiff's Response to Declaration of Michael Snow" (<u>Id.</u>, pp. 38 – 39.); (21) A copy of Plaintiff's Response to Defendants' Exhibit 24 (Criminal Judgment Order) (<u>Id.</u>, p. 40.); (22) A copy of "Plaintiff's Response to Declaration of Jeremy James" (<u>Id.</u>, pp. 41 – 44.); and (23) A copy of "Plaintiff's Response to Declaration of Jason Bailey" (Document No. 56-2.).

## THE STANDARD

### Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009)(quoting <u>Bell Atlantic Corporation v. Twombly</u>, 550 U.S. 554, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> Although factual allegations must be accepted as true for purposes of a motion to dismiss, this principle does not apply to legal conclusions. <u>Id.</u> "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements,

7

do not suffice." Id. The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Twombly, 550 U.S. at 555, 127 S.Ct. at 1959. Where a *pro se* Complaint can be remedied by an amendment, however, the District Court may not dismiss the Complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992).

**Summary Judgment**

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Once the moving party demonstrates the lack of evidence to support the non-moving party's claims, the non-moving party must go beyond the pleadings and make a sufficient showing of facts presenting a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 - 87, 106 S.Ct.1348, 89 L.Ed.2d 538 (1986). All inferences must be drawn from the underlying facts in the light most favorable to the non-moving party. Matsushita, 475 U.S. at 587, 106 S.Ct. at 1356. Summary judgment is required when a party fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual issues proving other elements of the claim. Celotex, 477 U.S. at 322-23, 106 S.Ct. at 2552-53. Generally speaking, therefore, summary judgment will be granted unless a reasonable jury could return a verdict for the non-moving party on the evidence presented. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If no facts or inferences which can be drawn from the circumstances will support Plaintiff's claims, summary judgment is appropriate.

**DISCUSSION**

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a)(1996), requires that inmates

exhaust available administrative remedies prior to filing civil actions though the administrative process may not afford them the relief they might obtain through civil proceedings.[4] <u>Woodford v. Ngo</u>, 548 U.S. 81, 126 S.Ct. 2378, 2382-83, 165 L.Ed.2d 368 (2006); <u>Porter v. Nussle</u>, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002)(The Prison Litigation Reform Act's exhaustion requirement applies to all inmate suits about prison life whether they involve general circumstances or particular episodes and whether they allege excessive force or some other wrong.); <u>Booth v. Churner</u>, 532 U.S. 731, 121 S.Ct. 1819, 1820,149 L.Ed.2d 958 (2001)("Under 42 U.S.C. § 1997e(a), an inmate seeking only money damages must complete any prison administrative process capable of addressing the inmate's complaint and providing some form of relief, even if the process does not make specific provision for monetary relief."). Exhaustion of administrative remedies is also required when injunctive relief is requested. <u>Goist v. U.S. Bureau of Prisons</u>, 2002 WL 32079467, *4, fn.1 (D.S.C. Sep 25, 2002), <u>aff'd</u>, 54 Fed.Appx. 159 (4th Cir. 2003), <u>cert. denied</u>, 538 U.S. 1047, 123 S.Ct. 2111, 155 L.Ed.2d 1088 (2003). "[T]here is no futility exception to the PLRA's exhaustion requirement." <u>Massey v. Helman</u>, 196 F.3d 727, 733 (7th Cir. 1999). But the plain language of the statute requires that only "available" administrative remedies be exhausted. A grievance procedure is not "available" if prison officials prevent an inmate from using it. <u>Dale v. Lappin</u>, 376 F.3d 652, 656 (7th Cir. 2004); <u>Mitchell v. Horn</u>, 318 F.3d 523, 529 (3d Cir. 2003)(inmate lacked available administrative remedies for exhaustion purposes where inmate was unable to file a grievance because prison officials refused to provide him with the

---

[4] 42 U.S.C. § 1997e(a) provides as follows:

> No action shall be brought with respect to prison conditions under section 1983 of this title or any other federal law, by a prisoner confined in any jail, prison, or other correction facility until such administrative remedies as are available are exhausted.

necessary grievance forms); <u>Miller v. Norris</u>, 247 F.3d 736, 740 (8th Cir. 2001)(allegations that prison officials failed to respond to his written requests for grievance forms were sufficient to raise an inference that inmate had exhausted his available administrative remedies.)

  If an inmate exhausts administrative remedies with respect to some, but not all, of the claims he raises in a Section 1983, <u>Bivens</u> or FTCA action, the Court must dismiss the unexhausted claims and proceed with the exhausted ones. <u>See</u> <u>Jones v. Bock</u>, 549 U.S. 199, 127 S.Ct. 910, 913, 166 L.Ed.2d 798 (2007)("The PLRA does not require dismissal of the entire complaint when a prisoner has failed to exhaust some, but not all, of the claims included in the complaint. * * * If a complaint contains both good and bad claims, the court proceeds with the good and leaves the bad.") It appears to be the majority view as well that exhausting administrative remedies after a Complaint is filed will not save a case from dismissal. <u>See</u> <u>Neal v. Goord</u>, 267 F.3d 116, 121-22 (2d Cir. 2001)(*overruled on other grounds*), a Section 1983 action, citing numerous cases. The rationale is pragmatic. As the Court stated in <u>Neal</u>, allowing prisoner suits to proceed, so long as the inmate eventually fulfills the exhaustion requirement, undermines Congress' directive to pursue administrative remedies prior to filing a complaint in federal court. Moreover, if during the pendency of a suit, the administrative process was to produce results benefitting plaintiff, the federal court would have wasted its resources adjudicating claims that could have been resolved within the prison grievance system at the outset. <u>Neal</u>, 267 F.3d at 123. In <u>Freeman v. Francis</u>, 196 F.3d 641, 645 (6th Cir. 1999), the Court stated: "The plain language of the statute [§ 1997e(a)] makes exhaustion a precondition to filing an action in federal Court.. . .The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit." Thus, the PLRA requires that available administrative remedies must be exhausted before the filing of a suit in Federal Court. It is further clear that the PLRA does not require that an inmate allege or

10

demonstrate that he has exhausted his administrative remedies. See Jones v. Bock, supra; Anderson v. XYZ Correctional Health Services, 407 F.3d 674, 677 (4ᵗʰ Cir. 2005). Failure to exhaust administrative remedies is an affirmative defense. Prison officials have the burden of proving that the inmate had available remedies which he did not exhaust. See Dale v. Lappin, 376 F.3d 652, 655 (7ᵗʰ Cir. 2004)("Although exhaustion of administrative remedies is a precondition to a federal prisoner filing a Bivens suit, [citations omitted] failure to exhaust is an affirmative defense that the defendants have the burden of pleading and proving." (Citations omitted)) The Court is not precluded, however, from considering at the outset whether an inmate has exhausted administrative remedies. The Fourth Circuit stated in Anderson, 470 F.3d at 683, as follows:

> [A]n inmate's failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by the defendant. That exhaustion is an affirmative defense, however, does not preclude the district court from dismissing a complaint where the failure to exhaust is apparent from the face of the complaint, nor does it preclude the district court from inquiring on its own motion into whether the inmate exhausted all administrative remedies.

For Bivens purposes, proper exhaustion of available administrative remedies requires that "a prisoner must submit inmate complaints and appeals in the place, and at the time, the prison's administrative rules require." Dale v. Lappin, 376 F.3d at 655 (internal citations omitted); also see Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2382, 165 L.Ed.2d 368 (2006)(stating that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings"). The Federal Bureau of Prisons [BOP] has established an Administrative Remedy Program, 28 C.F.R. § 542.10, *et seq.*, through which an inmate may seek formal review of issues or complaints relating to confinement. Depending upon at what level an inmate initiates it, the BOP's Administrative Remedy Program is a three-step or four-step grievance procedure. As a general matter, a federal inmate is required first to attempt to resolve

11

his complaints informally by the submission of an "Inmate Request to Staff Member" form. 28 C.F.R. § 542.13. The inmate's request may be rejected if improper, and the inmate will then be advised of the proper administrative procedure. Id. Within 20 days after the circumstances occurred which are the subject of the inmate's complaints, the inmate must complete this first step and submit a formal "Administrative Remedy Request" on a BP-9 form to an institution staff member designated to receive such Requests, 28 C.F.R. § 542.14(a) and (c)(4), or under exceptional circumstances to the appropriate Regional Director. Id., § 542.14(d). The Warden of the institution and the Regional Director must respond to the inmate's Request within 20 and 30 days respectively. Id., § 542.18. If the inmate's Request was directed to the Warden of the institution and the Warden's response is unfavorable, the inmate may appeal within 20 days to the Regional Director on a BP-10. Id., § 542.15(a) and (b). If the Regional Director's response is unfavorable, the inmate may appeal to General Counsel on a BP-11 form within 30 days after the Regional Director signed the response. Id., § 542.15(a). General Counsel has 40 days to respond to the inmate's appeal. Id., § 542.18. The administrative process is exhausted when General Counsel issues a ruling on the inmate's final appeal. Id., § 542.15(a). The entire process takes about 120 days to complete. An inmate's submission may be rejected at any level for failure to comply with the administrative remedy requirements or if the submission is written in an obscene or abusive manner. Id., § 542.17(a). The inmate will be provided with notice of any defect and whether the defect is correctable. Id., § 542.17(b). If a request or appeal is rejected and the inmate is not given an opportunity to correct the defect and resubmit, the inmate may appeal the rejection to the next appeal level. Id., § 542.17(c).

In their Motion, Defendants argue that Plaintiff failed to exhaust his administrative

remedies. (Document Nos. 44 and 45.) Specifically, Defendants contend that "Plaintiff did not fully exhaust his administrative remedies on any of his claims." (Document No. 45, pp. 15 - 19.) In support, Defendants submit the Declaration of Ms. Sharon Wahl, a Paralegal for the Consolidated Legal Center at FCI Beckley. (Document No. 44-1, pp. 2 - 4.) Ms. Wahl declares that in her position she has access to SENTRY, the Bureau of Prisons' online system containing, among other things, information about inmates' administrative remedy filings. (Id., p. 2.) Ms. Wahl explains that she also has access to information regarding inmates in the BOP's custody. (Id.) Specifically, Ms. Wahl states as follows in her Declaration (Id., pp. 2 - 4.):

5.      Plaintiff did not fully exhaust administrative remedies on any of his claims.

* * *

7.      A review of Plaintiff's administrative remedy history reveals that Plaintiff filed Administrative Remedy ID No. 826716-F1 on July 1, 2015, alleging he was hearing music coming from the air vents in his cell on a constant basis. On August 18, 2015, the Institution denied Plaintiff's remedy and noted that there was no music being piped into Plaintiff's cell. It was also explained that SHU staff did not have the ability to get into the ventilation system to send music through the vents. Plaintiff was informed he had 20 days to appeal the decision.

8.      On September 1, 2015, Plaintiff filed Administrative Remedy ID No. 833955-F1, again alleging he was hearing music in the vents. The remedy was rejected the same day and Plaintiff was notified that the remedy was a duplicate of Administrative Remedy ID No. 826716. He was instructed that he needed to file an appeal to the Regional Office if he was not satisfied with the Institution's response to the earlier remedy. Plaintiff did not appeal either of these remedies.

9.      Plaintiff's only other remedies he filed regarding FCI Beckley matters were rejected for not following proper procedures, were related to disciplinary actions, or involved a personal property confiscation of magazines claim. Furthermore, Plaintiff did not pursue any of these matters through the Central Office.

10.     Plaintiff filed Administrative Remedy ID No. 826711-F1 on July 1, 2015,

13

alleging multiple issues. This remedy was rejected at the institution for multiple reasons, including that the remedy did not raise the same issues as alleged in the informal remedy, multiples issues, was untimely failed, and other reasons. Plaintiff did not appeal the denial at any level.

11.     Plaintiff also filed Administrative Remedy ID No. 827150-R1 on July 7, 2015, with the Regional Office, skipping the Institutional level, alleging staff misconduct and claimed it was a sensitive issue. The Regional Office rejected the claim because Plaintiff's issue was not sensitive. Plaintiff disregarded the rejection and refiled this same appeal with the Regional Office on August 12, 2015, where it was again rejected for the same reasons. The Regional Office explained the Plaintiff had to first submit an Institutional Level remedy before the Regional Office would accept the claim. Plaintiff did not appeal either of those rejections to the Central Office.

12.     Plaintiff also filed Remedy ID No. 833978-R1 with the Regional Office on August 26, 2015, again alleging a staff misconduct claim and claiming the issue was sensitive. The remedy was rejected by the Regional Office because it was not a sensitive issue. As with the other remedies noted above, Plaintiff did not appeal that rejection or file the claim with the institution.

(Id., pp. 2 – 3.) Ms. Wahl states that the remaining administrative remedies involved Plaintiff's challenge to a disciplinary action and the confiscation of magazines. (Id., pp. 3 – 4.)

In Response, Plaintiff argues that he properly exhausted his administrative remedies. (Document No. 56, p. 2.) Plaintiff asserts that Exhibits AR-1, AR-2, and AR-3 prove that he properly exhausted his administrative remedies. (Id.) Plaintiff states that AR-2 is his "Central Office Administrative Remedy," which is the last step in the grievance process. (Id., p. 3.) Plaintiff explains that he has "no answer why the document was processed without a case number or why it was sent to the Mid-Atlantic Regional Office instead of the General Counsel in the Central Office of the FBOP in Washington, D.C." (Id.) Next, Plaintiff states that "[f]urther evidence showing I have, in fact, exhausted my administrative remedies is the conveniently worded declaration made by SIA Anthony Hussion." (Id.) Plaintiff explains that in "his declaration, Hussion states that he

14

'investigated' both my assertion of B. Coleman's assault upon me and that he interviewed me." (Id., pp. 3 – 4.) Plaintiff contends that "Hussion's conclusion established an additional record . . . that my administrative remedies had been exhausted." (Id., p. 4.) Finally, Plaintiff concludes that "the evidence shows that my efforts to file administrative remedies were tampered with, even blocked." (Id.)

Based upon a review of the record, the undersigned finds that Plaintiff failed to properly exhaust his administrative remedies pursuant to the PLRA. Although Plaintiff contends that he properly exhausted his administrative remedies, the record does not support such a finding. Exhibits AR-1, AR-2, and AR-3 do no support Plaintiff's conclusion that his administrative remedies were exhausted. The undersigned will first consider Plaintiff's Exhibit AR-1. Plaintiff's Exhibit AR-1 includes the following: (1) A copy of Plaintiff's "Request for Administrative Remedy Informal Resolution Form" and "Request for Administrative Remedy" (Remedy ID No. 826716-F1); and (2) Warden Coakley's Response (Remedy ID No. 826716-F1). (Document No. 2, pp. 8 – 11.) In Remedy ID No. 826716-F1, Plaintiff complains that correctional officers are subjecting him to "torturous music." (Id., p. 9.) By Response dated August 18, 2015, Warden Coakley advised Plaintiff that his Request for Administrative Remedy was closed with an explanation and he could appeal to the Regional Director if he was dissatisfied with the response (Remedy ID No. 826716-F1). (Id., p. 8.) Plaintiff, however, failed to file an appeal of Remedy ID No. 826716 with the Regional Director. The undersigned, therefore, finds that the record clearly reveals that Plaintiff failed to fully exhaust Remedy ID No. 826716.

Next, the undersigned will consider Plaintiff's Exhibit AR-2. Plaintiff's Exhibit AR-2 includes the following: (1) A copy of Plaintiff's "Request for Administrative Remedy" as filed

with the Regional Office on July 7, 2015 (Id., pp. 14 – 15.); (2) A copy of a "Rejection Notice"
dated July 7, 2015, from the Administrative Remedy Coordinator at the Mid-Atlantic Regional
Office stating that Remedy ID No. 827150-R1 was rejected because "the issue you raise is not
sensitive . . . you should file a request or appeal at the appropriate level via regular procedures"
(Id., p. 13.); (3) A copy of Plaintiff's "Central Office Administrative Remedy Appeal" stamped
received by the Mid-Atlantic Regional Office on August 11, 2015 (Id., p. 17.); and (4) A copy of
a "Rejection Notice" dated August 12, 2015, from the Administrative Remedy Coordinator at the
Mid-Atlantic Regional Office stating that Remedy ID No. 827150-R2 was rejected because
Plaintiff did not submit his request on the proper form and he failed to first file a BP-9 request
through the institution before filing his appeal[5] (Id., p. 12.). The undersigned finds that Plaintiff
did not properly exhaust Remedy ID No. 827150. First, Plaintiff began filing his "Administrative
Remedy Request" at the Regional level. Although it is permissible for an inmate to submit his
"Administrative Remedy Request" directly to the Regional Director when the inmates "reasonably
believes the issue is sensitive and the inmate's safety or well-being would be placed in danger if
the Request became known at the institution," Plaintiff failed to follow proper procedure following
rejection by the Regional Director. Title 28 C.F.R. § 542.14(d)(1) provides, in pertinent part, as
follows:

> The inmate shall clearly mark "Sensitive" upon the Request and explain, in writing,
> the reason for not submitting the Request at the institution. If the Regional
> Administrative Remedy Coordinator agrees that the Request is sensitive, the
> Request shall be accepted. Otherwise, the Request will not be accepted, and the
> inmate shall be advised in writing of that determination, without a return of the
> Request. The inmate may pursue the matter by submitting an Administrative
> Remedy Request locally to the Warden. The Warden shall allow a reasonable
> extension of time for such a resubmission.

---

[5] Plaintiff's Remedy ID No. 827150-R1 and R2 alleged unprofessional, inappropriate conduct or
misconduct by staff. (Document No. 2, pp. 12 - 17.)

28 C.F.R. § 542.14(d)(1). Instead of filing his "Administrative Remedy Request" with the institution following the Regional Director's determination that the Request did not involve a sensitive issue, Plaintiff filed his "Central Office Administrative Remedy Appeal" with Regional Office. Plaintiff's request was again denied with instructions for Plaintiff to file his Request with the institution. Although Plaintiff alleges that some type of mischief occurred resulting in this "Central Office Administrative Remedy Appeal" being filed with the Regional Office instead of the Central Office, there is no evidence to support such a conclusion. Additionally, the filing of the foregoing administrative remedy would not have resulted in the exhaustion of the claims asserted in Plaintiff's Complaint. Such an appeal to the Central Office would have merely involved the issue of whether the Regional Office appropriately determined that the issue was not "sensitive" and appropriately filed with the Regional Office. Accordingly, the undersigned finds that Remedy ID No. 827150 is not properly exhausted.

Third, the undersigned will consider Plaintiff's Exhibit AR-3. Plaintiff's AR-3 includes the follow: (1) A copy of Plaintiff's "Request for Administrative Remedy Informal Resolution Form" dated August 11, 2015 (Id., p. 20 and Document No. 2-1, p. 1.); (2) A copy of Plaintiff's "Request for Administrative Remedy" dated August 17, 2015 (Remedy ID No. 833955-F1) (Document No. 2, p. 19.); and (3) A copy of a "Rejection Notice" dated September 1, 2015, from the Administrative Remedy Coordinator at FCI Beckley stating that Remedy ID No. 833955-F1 was rejected because Plaintiff submitted the request at the wrong level, he filed Remedy ID No. 826716-F1 regarding the same issue, and Plaintiff should file an appeal with the Regional Office (Id., p. 18.). Again, the above documents do not support a finding that Plaintiff properly exhausted Remedy ID No. 833955-F1. Specifically, there is no evidence that Plaintiff filed an appeal of

17

Remedy ID No. 833955 to the Regional Director. The undersigned, therefore, finds that the record clearly reveals that Plaintiff failed to fully exhaust Remedy ID No.833955. Based upon the foregoing, the Court finds that Plaintiff's Exhibits AR-1, AR-2, and AR-3 do not demonstrate that Plaintiff fully exhausted his administrative remedies concerning claims asserted in his Complaint.

Fourth, the undersigned will consider Plaintiff's claim that Mr. Hussion's Declaration evidences that Plaintiff fully exhausted his administrative remedies. A review of Mr. Hussion's Declaration does not support Plaintiff's claim. In his Declaration, Mr. Hussion states that he is employed as the Special Investigative Agent ["SIA"] at FCI Beckley. (Document No. 44-1, pp. 90 – 92.) In his Declaration, Mr. Hussion merely explains that he investigated Plaintiff's claim of improper conduct by prison staff and he determined Plaintiff's claims to be without merit. (Id.) Specifically, Mr. Hussion states, in pertinent part, as follows:

> 3.   I am aware that William Pumphrey ("Plaintiff"), Register Number 16475-081, made an allegation that Officer Coleman assaulted him on August 14, 2015.

> 4.   I opened an investigation as a result of his claim that Officer Coleman assaulted him.

> 5.   I interviewed Plaintiff about his injury on the same date he reported it. Plaintiff told me that Officer Coleman had assaulted him during the morning watch shift. He claimed Officer Coleman entered his cell, back handed him on the right eye, and then left the cell.

> 6.   Plaintiff also told me that loud music was being played by SHU staff through the vents in the cell and at the door. Plaintiff stated that the music was made up of Christmas music and the National Anthem, for examples. Plaintiff told me that this had been going on for months and he wanted me to speak to the officers about the sounds. He claimed Dr. Weaver would confirm his story about the music.

> 7.   In response to Plaintiff's allegation concerning the music, I exited the cell and went to the officer's station to see if there was any device playing music. I noted that there was a radio in the corner of the officer station that was

playing a local radio station at a low level. I also noted that there was a CD of country music in the CD player of the radio but no other CDs were around.

8.     I also spoke to Dr. Weaver and asked him if he had heard any of the alleged torturous music. Dr. Weaver indicated to me that he had not heard any music and that he believed Plaintiff was making the story up to try to convince staff that he was mentally ill.

9.     During my interview of Plaintiff, without being prompted, Plaintiff stated to me that he did not strike himself. I responded by stating that I had not accused Plaintiff of striking himself. Plaintiff responded, "This can only happen 2 ways, either I did it myself or a staff member did it."

10.    I further investigated Plaintiff's allegation and determined that the SHU #1 Officer on shift at the time, Officer Coleman, did not have access to keys to any cells, and therefore could not possibly have opened the cell to assault Plaintiff, as Plaintiff alleged.

11.    The lack of access of keys for SHU staff working alone at the time is done for security reasons. In part, this is done so that more than one staff member is present when a cell is opened so that staff will not have to confront an inmate in SHU by themselves. Additionally, this helps prevent another inmate from potentially overpowering a single officer and obtaining access to cell door keys.

12.    During a follow-up interview I had with Plaintiff, Plaintiff refused to sign an affidavit about what he had either stated to me. He stated that staff would be answering to the Court and that he would be filing lawsuits. At that time, Plaintiff attempted to order me out of his cell and refused to further cooperate in the investigation.

13.    I completed my investigation and concluded as follows:
       Although I cannot determine how Pumphrey sustained his injuries, I have discredited Pumphrey's statements numerous times as a result of the initial interview. I believe Pumphrey either punched himself with his right hand or fell or bumped into something and is using the injury in an attempt to bring false allegations against staff.

14.    I know that FCI Beckley does not have a system of devices that plays music or other sounds into inmate cells through vents or by other means.

(Id., pp. 90 – 91.) Mr. Hussion's above Declaration does not evidence that Plaintiff exhausted his

19

administrative remedies. Mr. Hussion's Declaration merely establishes that an investigation was conducted, provides details of the investigation, and concludes that Plaintiff's allegations were meritless. Contrary to Plaintiff's assertion, Mr. Hussion's Declaration fails to state any facts indicating that Plaintiff properly exhaust his administrative remedies pursuant to the PLRA.

Finally, the undersigned will consider Plaintiff's claim that "the evidence shows that [his] efforts to file administrative remedies were tampered with, even blocked." (Id.) In his Declaration, Danny Akers stated that he was employed as a Correctional Counselor at FCI Beckley and he was assigned as Plaintiff's Counselor. (Document No. 44-1, pp. 97 – 98.) Defendant Akers states that Plaintiff's efforts to file administrative remedies were not tampered with by prison staff. (Id.) Specifically, Defendant Akers states, in pertinent part, as follows:

> 7.    Likewise, Plaintiff's claims of me delaying his mail, losing his administrative remedies and denying him administrative remedy forms are all false.
>
> 8.    I did provide Plaintiff administrative remedy forms, I did not tamper with his mail, and I provided him numerous stamps and made multiple copies of his legal matters for him while he was incarcerated at FCI Beckley.
>
> 9.    I did let Plaintiff know that though he would continue to be provided with the numerous copies he requested, if he ever obtained funds to pay for the copies he would have to pay for those at that time.
>
> 10.   One of the reasons I recall Plaintiff is that he requested and received more pens, paper, stamps, copies and other related material than most inmates.

(Id.) Thus, the record fails to support Plaintiff's conclusory claim that his efforts to file administrative remedies were tampered with or blocked. See Ruggiero v. County of Orange, 467 F.3d 170, 178 (2nd Cir. 2006)(affirming dismissal for failure to exhaust because Plaintiff "points to no affirmative act by prison officials that would have prevented him from pursuing administrative remedies."); Sheldon v. Bledsoe, 2007 WL 806124 (W.D.Va. March 15,

2007)(finding plaintiff's "vague and conclusory statements that he was denied the use of the administrative remedy procedures cannot withstand defendants' specific evidence about his administrative remedy history on issues unrelated to this case"). A review of the record further reveals that Plaintiff filed numerous administrative remedies. During Plaintiff's six-month period of incarceration at FCI Beckley, Plaintiff filed nine Administrative Remedy Requests (Remedy ID Nos. 826716, 833955, 826711, 827150, 833978, 824155, 831818, 831820, and 825616). Based upon the foregoing, the undersigned respectfully recommends that Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment"[6] be granted.[7]

---

[6] The undersigned finds it unnecessary to consider the other reasons which Defendants have submitted for dismissal.

[7] Notwithstanding the foregoing, the undersigned finds that Plaintiff has failed to allege more than *de minimis* injuries. The Prison Litigation Reform Act [PLRA] expressly prohibits the filing of civil actions by prisoners "confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). Although the PLRA does not define "physical injury" and the Fourth Circuit has not provided a definition, other courts have held that the "physical injury" need not be significant, but it must be more than *de minimis*. *See Flanory v. Bonn*, 604 F.3d 249, 254 (6th Cir. 2010); *Mitchell v. Brown & Williamson Tobacco Corp.*, 294 F.3d 1309, 1312-13 (11th Cir. 2002); *Siglar v. Hightower*, 112 F.3d 191 (5th Cir. 1997); *Zehner v. Trigg*, 952 F.Supp. 1318 (S.D. Ind. 1997). In addition, "[a] plaintiff seeking compensatory damages for emotional distress cannot rely on conclusory statements that the plaintiff suffered emotional distress [or] the mere fact that a constitutional violation occurred, but, rather, the testimony must establish that the plaintiff suffered demonstrable emotional distress, which must be sufficiently articulated." *Knussman v. Maryland*, 272 F.3d 625, 640 (4th Cir. 2001), quoting *Price v. City of Charlotte*, 93 F.3d 1241, 1254 (4th Cir. 1996)(internal quotation marks omitted).
   In the instant case, Plaintiff seeks physical and emotional damages. Specifically, Plaintiff alleges that the physical and psychological effects include: sleep deprivation, stomach distress, and "debilitating headaches." (Document No. 2-1, p. 5.). Such conditions, however, do not constitute more than a *de minimis* injury. *See Chatham v. Adcock*, 334 Fed.Appx. 281, 284 (11th Cir. 2009)(finding that a plaintiff's claims of anxiousness, nausea, nightmares, hallucinations, and increase in blood pressure were not enough to satisfy the Section 1997e(e) physical injury requirement); *Alexander v. Tippah County, Miss.*, 351 F.3d 626, 631-32 (5th Cir. 2003)(finding that Section 1997e(e) precluded the plaintiffs from recovering for their emotional and mental injuries where the only physical injuries they had suffered were nausea and vomiting); *Siglar v. Hightower*, 112 F.3d 191, 193-94 (5th Cir. 2003)(finding that a temporary, sore, bruised ear was *de minimis* and failed to meet the requisite physical injury requirement to support a claim of emotional damages); *Casey v. Brockley*, 2015 WL 8008728, * 9 (N.D.N.Y. Nov. 9, 2015)(stating that "numerous courts have held-correctly . . . that physical manifestations of emotional injuries (e.g. anxiety, depression, stress, nausea, hyperventilation, headaches, insomnia, dizziness, appetite loss, weight loss, etc.) are not 'physical injures'

## PROPOSAL AND RECOMMENDATION

The undersigned therefore respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **GRANT** the Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 44), **DISMISS** Plaintiff's Complaint (Document Nos. 2 and 2-1), and remove this matter from the Court's docket.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Irene C. Berger. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the Plaintiff shall have seventeen (17) days

---

for purposes of the PLRA"); *Lewis v. Cox*, 2011 WL 3106929, * 1(W.D.La. July 25, 2011)(finding that "[n]ausea and lack of sleep are mere symptoms of the alleged emotional distress he suffered and do not, in and of themselves, constitute the type of physical injury required under the PLRA"); *Grainger v. Federal Bureau of Prisons*, 2009 WL 47127, * 3 (S.D.Tx. Jan. 6, 2009)(finding that plaintiff's complaints of anxiety, stress, emotional distress, loss of appetite, headaches and sleeplessness did not constitute more than a *de minimis* injury); *May v. Donneli*, 2009 WL 3049613, * 3 (N.D.N.Y. Sept. 18, 2009)(finding that weight loss and an increase in blood pressure did not constitute more than a *de minimis* physical injury). To the extent Plaintiff alleges that he suffered swelling and bruising around his eye, such an injury is de minimis. *Perez v. United States*, 330 Fed.Appx. 388, 389 (3rd Cir. 2009)(*De minimis* injuries are injuries such as a "sore muscle, an aching back, a scratch, an abrasion, a bruise, etc. . . . [like those that] people in the regular and ordinary events and activities in their daily lives do not seek medical care for."); *also see Hill v. Crum*, 727 F.3d 312 (4th Cir. 2013)(citation omitted)(noting that the following injuries are *de minimis*: bruising, swelling, and loosened tooth; hairline fracture to finger that "required little medical treatment and no pain medication;" severe headache; and back and shoulder aches of limited duration); *Chavero-Linares v. Smith*, 2013 WL 5655559 (N.D. Iowa Oct. 15, 2013)("a relatively minor scratch or cut and cheek pain, even if this cheek pain was ongoing, is still *de minimis* as a matter of law because [plaintiff] suffered no serious long-term pain and received no medical attention for her injury"); *Karavias v. Virginia*, 2013 WL 3879701, * 4 (W.D.Va. July 26, 2013)(indicating that plaintiff's bruises and scrapes were *de minimis*); *Sublet v. United States*, 2011 WL 690533, * 3 (W.D.La. Jan. 28, 2011)(finding a bruise to be *de minimis*), *aff'd*, 451 Fed.Appx. 458 (5th Cir.), *cert. denied*, ___ U.S. __, 132 S.Ct. 1961, 182 L.Ed.2d 788 (2012). Physical pain alone is insufficient to constitute more than a *de minimis* injury. *See Calderson*, 2007 WL 1010383 at * 8(citation omitted)(physical pain alone is a *de minimis* injury that may be characterized as a mental or emotional injury); *Shields v. United States*, 2010 WL 2803399 (N.D.N.Y. July 15, 2010)("If plaintiff's injury is *de minimis*, he is not entitled to compensation for pain and suffering."), *aff'd*, 446 Fed.Appx. 325 (2nd Cir. 2011). The undersigned, therefore, finds that at most Plaintiff alleges a *de minimis* injuries.

(fourteen days, filing of objections and three days, mailing/service) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, District Judge Berger and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Plaintiff, who is acting *pro se*, and transmit a copy to counsel of record.

Date: July 18, 2016.

Omar J. Aboulhosn
United States Magistrate Judge