IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

WILLIAM C. PUMPHREY,

        Plaintiff,

v.                            CIVIL ACTION NO.   5:15-cv-14430

JOE COAKLEY, et al.,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed the *Proposed Findings and Recommendation* (PF&R) (Document 65), filed by the Honorable Omar J. Aboulhosn, United States Magistrate Judge, and the *Plaintiff's Objections to Magistrate's Proposed Findings & Recommendation* (Document 68).  For the reasons set forth herein, the Court finds that the Plaintiff's objections should be overruled, and the Magistrate Judge's PF&R adopted.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

The Magistrate Judge provided a thorough summary of the alleged facts and procedural history in this case in his PF&R.  The Court adopts the statement of facts and procedural history set forth in the PF&R, but provides the following as a concise summary.  The Plaintiff, then an inmate at Federal Correctional Institution-Beckley (FCI-Beckley), initiated this action with the filing of a *Complaint* (Document 2) on October 28, 2015.  The Plaintiff raised a number of claims for violation of his constitutional and civil rights under *Bivens v. Six Unknown Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).  The Plaintiff named a number of FCI-Beckley employees as defendants, and asserted that the Warden orchestrated a scheme, perpetuated by the

other defendants, to systematically torture him by using secret, hidden devices to pump "irritating, nonsensical music" into his cell in the FCI-Beckley Special Housing Unit (SHU). (Pl.'s Compl., at 4-5.) The Plaintiff contended that the music increased his anxiety and "exacerbated serious pre-existing health issues." (*Id*. at 5.) The Plaintiff further maintains that FCI-Beckley staff have harassed him by banging and kicking his cell door. The Plaintiff alleges that because of this harassment, he grinds his teeth compulsively and has lost numerous fillings, and also suffered from headaches. The Plaintiff also alleges that the Defendants have endangered his life, by spreading false rumors that he is a child molester, and caused him mental anguish, by making sexual overtures to him in the shower. Finally, the Plaintiff maintains that Defendant B. Coleman struck him without provocation, resulting in swelling and bruising, and that other Defendants have verbally threatened him, intentionally injured him when placing him in restraints, and, when pushing him in a wheelchair, have purposefully rammed other objects in order to cause him injury.

The United States Attorney for the Southern District of West Virginia filed the *Defendants Motion to Dismiss, or in the Alternative for Summary Judgment* (Document 44) on February 12, 2016. The United States made four core arguments: (1) that the Plaintiff failed to properly exhaust his administrative remedies; (2) that the Plaintiff failed to state a claim for relief on any of his allegations, (3) that the Plaintiff could not recover emotional or psychological damages without a showing of physical injury, and (4) that the Defendants were entitled to qualified immunity. (Def. Mot. to Dismiss, at 1-2.)

On July 18, 2016, the Magistrate Judge submitted his PF&R, recommending that the Court grant the motion of the United States, and dismiss the case from the docket. The Magistrate Judge found that the Plaintiff had failed to exhaust his administrative remedies, as required by the Prison

2

Litigation Reform Act (PLRA), 42 U.S.C. §1997e(a). (PF&R, at 15.) The Plaintiff filed his objections to the PF&R on July 28, 2016. The Plaintiff's objections are ripe for review by the Court.

## APPLICABLE LAW

The PLR requires that inmates exhaust all administrative remedies prior to filing a civil action. *Woodford v. Ngo*, 548 U.S. 81 (2006); *Porter v. Nussle*, 534 U.S. 516 (2002). However, the statute only requires that "available" administrative remedies be exhausted. A grievance procedure is not "available" if prison officials prevent inmate access. *Dale v. Lappin*, 376 F.3d 652, 656 (7th Cir. 2004); *Mitchell v. Horn*, 318 F.3d 523, 529 (3rd Cir. 2003). If an inmate exhausts some, but not all, of the claims raised in a *Bivens* action, the Court must dismiss the exhausted claims, but proceed on the unexhausted claims. *See Jones v. Bock*, 549 U.S. 199 (2007). Failure to exhaust is an affirmative defense, and prison officials have the burden of proving that the inmate had available remedies which he did not exhaust. *See Dale*, 376 at 655. For *Bivens* purposes, proper exhaustion requires that a prisoner "submit inmate complaints and appeals in the place, and at the time, the prison's administrative rules require. *Id*. at 655 (internal citations omitted); *see also Ngo*, 548 U.S. at 81) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings.")

The Federal Bureau of Prisons (BOP) has established an Administrative Remedy Program (ARP), 29 C.F.R. § 542.10, *et. seq.*, through which inmates may request formal review of issues or complaints related to confinement. Depending upon the level at which the inmate initiates the complaint, the ARP has either three or four levels. Generally, inmates are first required to attempt

3

to resolve grievances informally, by submitting an "Inmate Request to Staff Member." 28 U.S.C. § 542.13. The request may be rejected if improper. At this point the institution is required to advise the inmate of the proper administrative procedure. *Id*. Within 20 days after the incident occurs, the inmate must complete an "Administrative Remedy Request" on a BP-9 form to an institution staff member designated to receive such requests, or under exceptional circumstances, to the appropriate regional director. 28 C.F.R. § 542.14(a), (c)(4), (d). The Warden of the institution and the Regional Director must respond to the request within 20 and 30 days, respectively. *Id*., § 542.15(a), (b). If the inmate's request was directed to the Warden and the response was unfavorable, the inmate may appeal within 20 days to the Regional Director on a BP-10 form. *Id*., § 542.15(a). If the Regional Director's response is unfavorable, the inmate may appeal to the General Counsel on a BP-11 form within 30 days after the Regional Director signed the response. *Id*., § 514.18. The administrative process is exhausted when General Counsel issues a ruling on the inmate's final appeal. *Id*., § 542.15(a). The entire process takes roughly 120 days to complete. An inmate's submission may be rejected at any level for failure to comply with the administrative remedy requirements, or if the submission is written in an obscene or abusive manner. *Id*., § 542.17(a). The inmate will be provided with notice of any defect and whether the defect is correctible. *Id*., § 542.17(b). If a request or appeal is rejected and the inmate is not given an opportunity to correct the defect and resubmit, the inmate may appeal the rejection to the next level. *Id*., §542.17(c).

## STANDARD OF REVIEW

This Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C).

However, the Court is not required to review, under a de novo or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). In addition, this Court need not conduct a de novo review when a party "makes general and conclusory objections that do not direct the Court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir.1982). When reviewing portions of the PF&R de novo, the Court will consider the fact that the Plaintiff is acting *pro se*, and his pleadings will be accorded liberal construction. *Estelle v. Gamble,* 429 U.S. 97, 106 (1976); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir.1978).

## DISCUSSION

The Plaintiff's only objection to the PF&R is that the Magistrate Judge improperly found that he failed to exhaust his administrative remedies. (Pl.'s Objections, at 2.) The Plaintiff claims that "throughout this case," he has "done everything possible to file the required administrative remedies," including "repeated filings hoping they would reach the appropriate parties." (*Id*.) The Plaintiff claims that the declaration of Sharon Wahl, a legal clerk at FCI-Beckley with access to SENTRY, a system used by the BOP to track administrative remedies, is unreliable, as "like all computer trackings[sic] the information is only as good as the information entered …," and "[g]arbage in [is] garbage out." (*Id*. at 3.) The Plaintiff further contends that the Defendants sought to block his access to administrative remedies, and "have substantial motive to lie," as "when [the Plaintiff's] case is won [the Defendants] will be subject to losing their jobs if not arrested for their criminal acts." (*Id*.) The Plaintiff maintains that he was "blocked" in his efforts to exhaust his administrative remedies, noting "[r]ejection after rejection, documents

5

blocked, destroyed or never mailed, insufficient postage or none at all – even "sensitive" administrative remedies rejected and lost …"  (*Id*. at 4.)  Finally, the Plaintiff avers that despite the Declarations submitted by each Defendant, his allegations are "absolutely true," and questions why no one has "noticed yet that America is sick to death of its corrupt government and its bureaucrats."  (*Id*. at 4-5.)

Given the applicable law, however, conspiracy theories and unsupported proclamations are insufficient grounds to prevail on his objection.  The Magistrate Judge, reviewing the record, properly found that the Plaintiff failed to exhaust his administrative remedies before filing the present suit.  In particular, the Magistrate Judge noted the Declaration of Ms. Wahl, who has "access to information regarding inmates in BOP custody" and can track the administrative filings by each prisoner.  (Decl. of Sharon Wahl, att'd as Ex. 1 to Def. Mot. to Dismiss, at 2-4.)  Ms. Wahl noted that the Plaintiff filed multiple administrative remedies relevant to the allegations in this case, and when these applications were rejected on various grounds, the Plaintiff did not follow the proper procedures to appeal.  (*Id*.)  The Magistrate Judge then conducted an exhaustive review of the Plaintiff's submissions to the Court, including excerpts of his administrative filings, in order to determine if the Plaintiff had exhausted his administrative remedies.  (*See* PF&R, at 14-17.)  The Magistrate Judge also reviewed the Plaintiff's contention that the Declaration of Anthony Hussein supported his position that he had exhausted his administrative remedies, and found the contention lacking in merit.  (*See* PF&R, at 18, citing Decl. of Anthony Hussein, att'd as Ex. 5 to Def. Mot. to Dismiss, at 90-92).  Finally, the Magistrate Judge reviewed the Plaintiff's assertion that his administrative remedies were altered or interfered with by FCI-Beckley staff, and found those allegations lacking in merit.  (*See* PF&R, at 20.)

The Court finds that the Magistrate Judge was correct, and that the Plaintiff failed to exhaust his administrative remedies. The Plaintiff provides no facts to support a contrary finding, beyond conclusory allegations about the reliability of the SENTRY system. Similarly, the Declaration of Mr. Hussein does not support the Plaintiff's contention that he had exhausted his administrative remedies. Finally, there is no support for the Plaintiff's assertion that he was unable to exhaust his administrative remedies based on the conduct of FCI-Beckley officials, other than the Plaintiff's own conclusory allegations of misconduct. Furthermore, the Plaintiff's credibility is at issue with respect to the allegations of interference in light of the significant volume of administrative filings he was able to make in this case. The Plaintiff's objection should be overruled, and this case should be dismissed.

## CONCLUSION

Wherefore, after careful consideration, the Court **ORDERS** that the *Plaintiff's Objections* (Document 68) be **OVERRULED** and that the Magistrate Judge's *Proposed Findings and Recommendation* (Document 65) be **ADOPTED**. The Court further **ORDERS** that the *Defendants' Motion to Dismiss, or in the Alternative for Summary Judgment* (Document 44) be **GRANTED** and that this case be **DISMISSED** and **STRICKEN** from the docket.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER: September 7, 2016

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA