## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BECKLEY DIVISION

| | | |
|---|---|---|
| **WILLIAM C. PUMPHREY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Civil Action No. 5:15-14430** |
| | ) | |
| **JOE COAKLEY,** *et al.***,** | ) | |
| | ) | |
| **Defendants.** | ) | |

### PROPOSED FINDINGS AND RECOMMENDATION

Pending before the Court is Defendants' "Renewed Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 90), filed on June 5, 2017. The Court notified Plaintiff pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 304 (4ᵗʰ Cir. 1975), that Plaintiff had the right to file a response to Defendants' Motion and submit Affidavit(s) or statements and/or other legal or factual material supporting his claims as they are challenged by the Defendants in moving to dismiss. (Document No. 93.) Plaintiff filed his Response in Opposition on June 19, 2017. (Document No. 97.) Having examined the record and considered the applicable law, the undersigned has concluded that Defendants' Motion should be granted in part and denied in part. Specifically, the undersigned recommends that Defendants' Renewed Motion be (1) denied as to Plaintiff's alleged failure to exhaust administrative remedies; (2) denied as to Plaintiff's claim of excessive force against Defendant Coleman and Defendant Harvey; (3) denied as to Defendants' request for Plaintiff's IFP status be revoked; and (4) granted as to Plaintiff's claim of conspiracy, audio torture, food tampering, verbal abuse, sexual harassment, invasion of privacy, mail tampering/access to court, violation of the administrative remedy process, and failure to intervene.

## FACTUAL AND PROCEDURAL HISTORY

On October 28, 2015, Plaintiff, acting *pro se* and an inmate at FCI Beckley, filed his Complaint in this matter for alleged violations of his constitutional and civil rights pursuant to Bivens v. Six Unknown Federal Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 24 L.Ed.2d 619 (1971).[1][1] (Document No. 2 and 2-1.) Plaintiff names the following as defendants: (1) Joe Coakley, Warden; (2) O. Gibson, Special Housing Unit Lieutenant; (3) J.D. James, Correctional Officer; (4) J. Bailey, Correctional Officer; (5) B. Coleman, Correctional Officer; (6) T. Toney, Correctional Officer; (7) D. Duncan; (8) C. Spencer, Correctional Officer; (9) A. Lester, Correctional Officer; (10) F. Riffle, Correctional Officer; (11) C. Honaker, Correctional Officer; (12) S. Denny, Correctional Officer; (13) J. Grogan, Correctional Officer; (14) D. Akers, Correctional Officer; (15) Unit Manager Snow; (16) Dr. Weaver, Psychologist; (17) J. Ford, Correctional Officer; (18) J. Williams, Correctional Officer; (19) E. Harvey, Correctional Officer; (20) Correctional Officer Head; (21) Unit Manager Smith; and (22) Correctional Officer Knoll. (Id.) Specifically, Plaintiff alleges that Defendants subjected him to cruel and unusual punishment. (Document No. 2-1.) First, Plaintiff alleges that Defendant Coakley "ordered his subordinates to conspire to systematically torture [Plaintiff] using an elaborate system of devices to play repeated parts of irritating, nonsensical music." (Id., p. 4.) Plaintiff contends that the music was "played over and over, twenty-four hours a day, seven days a week, at varying volumes." (Id.) Plaintiff further explains that a "soundtrack is played simultaneously that sometimes overlap the music with unearthly moans and groans, gun fire, explosions, children screaming in pain and

---

[1]   Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer and therefore, they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

terror." (Id., p. 5.) Plaintiff alleges that the foregoing keeps him "on edge and [his] nerves frayed" and "exacerbates serious pre-existing health issues." (Id.) Specifically, Plaintiff contends that he is suffering from the following: sleep deprivation, stomach distress (pain, burning, bowel incontinence, sporadic vomiting), debilitating headaches, short-term memory loss, and early dementia-like symptoms. (Id., p. 6.)

Plaintiff contends that Defendant Coakley and Gibson "are the architects and orchestrators of this bizarre and illegal behavior." (Id., pp. 5, 7 - 8.) Plaintiff claims that Defendant Gibson "controls and operates the devices that play the audio soundtracks throughout his workday and upon his departure, he leaves orders and instructions for his confederates to do likewise." (Id.) Plaintiff further explains that Defendant Gibson "has on more than one occasion tried to have [Plaintiff's] wheelchair taken." (Id.) Plaintiff contends that Defendant Gibson comes to his "door numerous times a day to beat, bang and/or kick it." (Id., p. 7.) Plaintiff alleges that these actions have caused him "to clench [his] jaw throughout the day and grind [his] teeth at night" resulting in the loss of eleven fillings. (Id.) Plaintiff further contends that his "headaches and spinal pain" are exacerbated by Defendant Gibson's deliberate actions. (Id.) Finally, Plaintiff asserts that Defendant Gibson threatens his physical safety, tampers with his food, tampers with his mail, and intentionally "wrecks his cell" during shake downs. (Id., pp. 7 - 10.)

Plaintiff alleges that Defendants James, Bailey, Coleman, Toney, Duncan, Spencer, Lester, Riffle, Honaker, Denny, Grogan, Ford, Williams, Head, and Smith conspire with Defendant Gibson to cause Plaintiff physical, psychological and emotional harm by engaging in above described conduct. (Id., pp. 10 - 19, 23 - 25.) Plaintiff further states that Defendant James, Spencer, and Riffle placed Plaintiff's life in imminent danger by spreading false rumors that Plaintiff is a child molester. (Id., pp. 11, 16 and 18.) Plaintiff complains that Defendant James makes "unwanted

3

sexual innuendoes and overtones while [Plaintiff] is in the shower." (Id., pp. 11 - 12.) As to Defendant Coleman, Plaintiff further alleges that Defendant Coleman entered his cell and hit Plaintiff in the face without just cause. (Id., p. 14.) Plaintiff contends that Defendant Coleman's improper action caused swelling and bruising to Plaintiff's face and eye. (Id.) As to Defendant Harvey, Plaintiff further claims that Defendant Harvey verbally threatens him, intentionally injures Plaintiff's wrists when placing handcuffs on him, and intentionally injures Plaintiff's lower extremities when pushing him through the prison in his wheelchair. (Id., p. 24.)

Plaintiff contends that Defendants Akers, Snow, and Weaver are aware of the cruel and unusual behavior of the foregoing Defendants, but fail to take any corrective action. (Id., pp. 20 - 22.) Plaintiff contends that Defendant Akers tampers with his mail and interferes with his attempts to exhaust his administrative remedies. (Id., p. 20.) Plaintiff claims that although Defendant Weaver is aware of the "torturous conduct" by the foregoing Defendants, Defendant Weaver "deliberately makes a false diagnosis" to cover up the inappropriate conduct. (Id., p. 22.) Plaintiff requests monetary damages and injunctive relief.[2] (Id., p. 27.)

By Order entered on December 16, 2015, United Magistrate Judge R. Clarke VanDervort granted Plaintiff's Application to Proceed Without Prepayment of Fees and directed the Clerk to issue process.[3] (Document No. 6.) On February 12, 2016, Defendants filed their "Motion to

---

[2] Plaintiff is no longer incarcerated at FCI Beckley.

[3] By Standing Order, this matter was referred to United States Magistrate Judge R. Clarke VanDervort for submission of proposed findings of fact and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (Document No. 5.) By Order entered on January 6, 2016, the above case was referred to the undersigned United States Magistrate Judge for submission of proposed findings of fact and a recommendation for deposition pursuant to 28 U.S.C. § 636(b)(1)(B). (Document No. 40.)

Dismiss, or in the Alternative Motion for Summary Judgment" and Memorandum in Support. (Document Nos. 44 and 45.) First, Defendants argued that "Plaintiff failed to exhaust his administrative remedies on any of his allegations." (Document No. 45, pp. 13 – 19.) Second, Defendants contended that "Plaintiff's claim that staff used an elaborate system of devices to torture him by sending irritating music, moans, screams and gunfire sounds into his cell through the vents fails to state a claim, lacks merit, and should be stricken." (Id., pp. 19 – 21.) Third, Defendants asserted that "Plaintiff's claim of being struck by Officer Coleman fails to state a claim and lacks merit." (Id., pp. 21 – 23.) Fourth, Defendants claimed that "Plaintiff's additional claims fail to state a claim, lacks merit, and should be stricken. (Id., pp. 23 – 26.) Fifth, Defendants argued that "Plaintiff cannot recover for emotional or psychological damages without a showing of physical injury." (Id., pp. 26 – 27.) Sixth, Defendants argued that they were entitled to qualified immunity. (Id., pp. 27 – 29.) Finally, Defendants argued that this "Court should revoke Plaintiff's IFP status based on his litigious misconduct." (Id., pp. 30 – 31.)

As Exhibits, Defendants attached the following: (1) The Declaration of Sharon Wahl (Document No. 44-1, pp. 2 – 4.); (2) A copy Plaintiff's "Inmate Discipline Data Chronological Disciplinary Record" as of January 25, 2016 (Id., pp. 6 – 8.); (3) A copy of the Discipline Hearing Officer Report dated March 30, 2015, regarding Incident Report No. 2692130 (Id., pp. 10 – 12.); (4) A copy of the Incident Report charging Plaintiff with Insolence in violation of Prohibited Act Code 312 (Incident Report No. 2733279) and Supporting Memo (Id., pp. 14 - 16.); (5) A copy of Plaintiff's Injury Assessment dated August 14, 2015 (Id., pp. 18 – 19.); (6) A copy of Registered Nurse ["RN"] Jeff Reports' Memorandum dated August 14, 2015, regarding Plaintiff's Injury Assessment (Id., p. 21.); (7) A copy of Plaintiff's "Administrative Remedy Generalized Retrieval" from March 11, 2015 through December 28, 2015 (Id., pp. 23 – 29.); (8) A copy of the PACER

Civil Party Search for Plaintiff (Id., p. 31.); (9) The Declaration of Dr. Jason Weaver (Id., pp. 33 – 37.); (10) A copy of Plaintiff's pertinent BOP psychological records (Id., pp. 39 – 79.); (11) The Declaration of Odie Gibson (Id., pp. 81 – 83.); (12) A copy of a Memorandum from SIA A. Hussion dated August 14, 2015, regarding Inmate Pumphrey (Id., p. 85.); (13) The Declaration of Christopher Head (Id., pp. 87 – 88.); (14) The Declaration of Declaration of Anthony Hussion (Id., pp. 90 – 92.); (15) A copy of a Memorandum from SIA A. Hussion dated August 14, 2015, regarding Inmate Pumphrey (Id., pp. 94 - 95.); (16) The Declaration of Danny Akers (Id., pp. 97 – 98.); (17) The Declaration of Franklin Riffle (Id., pp. 100 - 101.); (18) The Declaration of Jeremy James (Id., pp. 103 – 104.); (18) The Declaration of Jason Bailey (Id., pp. 106 – 107.); (19) The Declaration of Buck Coleman (Id., pp. 109 – 110.); (20) The Declaration of Taylor Toney (Id., p. 112.); (21) The Declaration of Dallas Duncan, Jr. (Id., p. 114.); (21) The Declaration of Charles Spencer, IV (Id., pp. 116 - 117.); (22) The Declaration of Aaron Lester (Id., p. 199.); (23) The Declaration of Charles Honaker (Id., p. 121.); (24) The Declaration of Samuel Denny (Id., p. 123.); (25) The Declaration of Jeremiah Grogan (Id., p. 125.); (26) The Declaration of James Ford (Id., p. 127.); (27) The Declaration of John Williams (Id., p. 129.); (28) The Declaration of Eric Harvey (Id., p. 131.); (29) The Declaration of Joe Coakley (Id., p. 134.); (30) The Declaration of Derek Smith (Id., pp. 136 - 137.); (31) The Declaration of Michael Snow (Id., pp. 139 - 140.); and (32) A copy of Plaintiff's "Judgment in a Criminal Case" as filed in the United States District Court for the District of New Mexico in Case No. 1:09-cr-01746 (Id., pp. 142 – 148.).

Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on February 16, 2016, advising him of the right to file a response to Defendants' "Motion to Dismiss, or in the Alternative for Summary Judgment." (Document No. 48.) On April 15, 2016, Plaintiff filed his Response and Memorandum in Support. (Document Nos. 56 and 57.) As

Exhibits, Plaintiff attached the following: (1) A copy of Plaintiff's pertinent medical records (Document No. 56-1, p. 1 - 2.); (2) A copy of "Plaintiff's Response to Declaration of Odie Gibson" (Id., pp. 3 – 8.); (3) A copy of "Plaintiff's Response to Declaration of Christopher Head" (Id., pp. 9 – 11.); (4) A copy of "Plaintiff's Response to Declaration of Anthony Hussion" (Id., pp. 12 – 15.); (5) A copy of "Plaintiff's Response to Declaration of Danny Aker" (Id., pp. 16 – 17.); (6) A copy of "Plaintiff's Response to Declaration of Franklin Riffle" (Id., pp. 18 – 19.); (7) A copy of "Plaintiff's Response to Declaration of Buck Coleman" (Id., pp. 20 – 21.); (8) A copy of "Plaintiff's Response to Declaration of Taylor Toney" (Id., p. 22.); (9) A copy of "Plaintiff's Response to Declaration of Dallas Duncan, Jr." (Id., p. 23.); (10) A copy of "Plaintiff's Response to Declaration of Charles Spencer, IV" (Id., p. 24.); (11) A copy of "Plaintiff's Response to Declaration of Arron Lester" (Id., p. 25.); (12) A copy of "Plaintiff's Response to Declaration of Charles Honaker" (Id., p. 26.); (13) A copy of "Plaintiff's Response to Declaration of Samuel Denny" (Id., p. 27.); (14) A copy of "Plaintiff's Response to Declaration of Jeremiah Grogan" (Id., p. 28.); (15) A copy of "Plaintiff's Response to Declaration of James Ford" (Id., pp. 29 - 30.); (16) A copy of "Plaintiff's Response to Declaration of John Williams" (Id., p. 31.); (17) A copy of "Plaintiff's Response to Declaration of Eric Harvey" (Id., pp. 32 - 33.); (18) A copy of "Plaintiff's Response to Declaration of Joe Coakley" (Id., pp. 34 - 35.); (19) A copy of "Plaintiff's Response to Declaration of Derek Smith" (Id., pp. 36 – 37.); (20) A copy of "Plaintiff's Response to Declaration of Michael Snow" (Id., pp. 38 – 39.); (21) A copy of Plaintiff's Response to Defendants' Exhibit 24 (Criminal Judgment Order) (Id., p. 40.); (22) A copy of "Plaintiff's Response to Declaration of Jeremy James" (Id., pp. 41 – 44.); and (23) A copy of "Plaintiff's Response to Declaration of Jason Bailey" (Document No. 56-2.).

By Proposed Findings and Recommendation entered on July 18, 2016, the undersigned

7

determined that Plaintiff failed to exhaust his administrative remedies and recommended that Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" be granted. (Document No. 65.) Plaintiff filed his Objections on July 28, 2016. (Document No. 68.) By Memorandum Opinion and Order entered on September 7, 2016, United States District Judge Irene C. Berger adopted the undersigned's recommendation and granted Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" be granted. (Document No. 70.) Plaintiff filed his Notice of Appeal on September 14, 2016. (Document No. 74.) By Per Curiam Opinion entered on April 11, 2017, the Fourth Circuit reversed this Court's dismissal of Plaintiff's <u>Bivens</u> action based upon his failure to exhaust and remanded the case for further proceedings. (Document No. 81.) The Fourth Circuit issued the mandate returning the case to this Court on June 5, 2017. (Document No. 92.)

On June 5, 2017, Defendants filed their "Renewed Motion to Dismiss, or in the Alternative for Summary Judgment" and Supplemental Memorandum in Support. (Document Nos. 90 and 91.) First, Defendants argue that "Plaintiff failed to exhaust his administrative remedies on any of his allegation, without any credibility determination." (<u>Id.</u>) Second, Defendants assert that "Plaintiff's claim of torture fails to state a claim for relief." (<u>Id.</u>) Third, Defendants claim that "Plaintiff's claim of excessive force by Officer Coleman fails to state a claim for relief." (<u>Id.</u>) Fourth, Defendants argue that "Plaintiff's other alleged constitutional claims involving conspiracy, bystander liability, tampering with mail and food, unwanted sexual innuendos, damage to reputation, etc. fail to state a claim for relief." (<u>Id.</u>) Fifth, Defendants argue that "Plaintiff may not recover emotional or psychological damages without a showing of physical injury." (<u>Id.</u>) Sixth, Defendants contend they are entitled to qualified immunity." (<u>Id.</u>) Finally, Defendants assert that the "court should revoke plaintiff's *in forma pauperis* status based on his litigious misconduct." (<u>Id.</u>) In support,

Defendants state that they incorporate their previously filed Memorandum of Law, Declarations, and Exhibits (Document Nos. 45 and 44-1.). As additional Exhibits, Defendants attach the following: (1) The Supplemental Declaration of Odie Gibson (Document No. 90, pp. 4 – 5.); (2) A copy of "Plaintiff's Response to Declaration of Odie Gibson" (Id., pp. 6 – 11.); and (3) A copy of a "Memorandum Decision and Order" from the United States District Court for the District of Utah in Pumphrey v. United States, Case No. 2:14-cv-00144 (Document No. 91, pp. 11 – 17.).

Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on June 5, 2017, advising him of the right to file a response to Defendants' "Renewed Motion to Dismiss, or in the Alternative for Summary Judgment." (Document No. 48.) On June 19, 2017, Plaintiff filed his "Affidavit Response and Objection to Defendants' Renewed Motion to Dismiss, or in the Alternative for Summary Judgment." (Document No. 97.) On June 20, 2017, Defendants filed their "Notice of Supplemental Authority" citing Ziglar v. Abbasi, 2017 WL 2621317 (June 19, 2017). (Document No. 98.) On June 21, 2017, Defendants filed their "Notice of Supplemental Authority" citing Matherly v. Andrews, et al., 2017 WL 2467088 (4th Cir. June 8, 2017). (Document No. 99.) On June 29, 2017, Plaintiff filed his "Objection to Defendants' Notice(s) of Supplemental Authority." (Document No. 102.)

## THE STANDARD

### Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009)(quoting Bell Atlantic Corporation v. Twombly, 550 U.S. 554, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

9

defendant is liable for the misconduct alleged." Id. Although factual allegations must be accepted as true for purposes of a motion to dismiss, this principle does not apply to legal conclusions. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Twombly, 550 U.S. at 555, 127 S.Ct. at 1959. Where a *pro se* Complaint can be remedied by an amendment, however, the District Court may not dismiss the Complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992).

### Summary Judgment

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Once the moving party demonstrates the lack of evidence to support the non-moving party's claims, the non-moving party must go beyond the pleadings and make a sufficient showing of facts presenting a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 - 87, 106 S.Ct.1348, 89 L.Ed.2d 538 (1986). All inferences must be drawn from the underlying facts in the light most favorable to the non-moving party. Matsushita, 475 U.S. at 587, 106 S.Ct. at 1356. Summary judgment is required when a party fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual issues proving other elements of the claim. Celotex, 477 U.S. at 322-23, 106 S.Ct. at 2552-53. Generally speaking, therefore, summary judgment will be granted unless a reasonable jury could return a verdict for the non-moving party on the evidence presented. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If no facts or inferences which can be drawn from the circumstances will

10

support Plaintiff's claims, summary judgment is appropriate.

## DISCUSSION

1.    **Failure to Exhaust Administrative Remedies:**

In their "Renewed Motion to Dismiss, or in the Alternative, Motion for Summary Judgment," Defendants state that "Plaintiff failed to exhaust his administrative remedies on any of his allegations, without a credibility determination." (Document No. 90, p. 1.) Defendants, however, do not address the above argument in their Supplemental Memorandum of Law in Support of their Renewed Motion. (Document No. 91.) To the extent Defendants are incorporating the same argument as previously set forth in their prior Memorandum of Law (Document No. 45), the undersigned finds that such an argument has already been addressed by this Court and the Fourth Circuit. Specifically, the Fourth Circuit determined that this Court "improperly made a credibility determination" as to whether prison staff delayed or destroyed Plaintiff's mail and refused to provide Plaintiff with material necessary to exhaust his administrative remedies. (Document No. 81.) The undersigned cannot make a finding that Plaintiff failed to exhaust his available administrative remedies without making a credibility determination. Accordingly, the undersigned respectfully recommends that Defendants' "Renewed Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" be denied as to Plaintiff's alleged failure to exhaust.

2.    **Section 1985(3) Conspiracy:**

In his Complaint, Plaintiff alleges that Defendants James, Bailey, Coleman, Toney, Duncan, Spencer, Lester, Riffle, Honaker, Denny, Grogan, Ford, Williams, Head, Smith, and Gibson conspired with one another to subject Plaintiff to harm by playing irritating and nonsensical music. (Document No. 2-1, pp. 10 - 19, 23 - 25.) In their Renewed Motion, Defendants argue that the complaint fails to state a conspiracy and Defendants are entitled to qualified immunity.

11

(Document Nos. 44, 45, 90, and 91.) In Response, Plaintiff argues that in filing his form Complaint he complied with the form instructions to "State here, as briefly as possible, the facts of your case. Describe what each Defendant did to violate your constitutional rights." (Document No. 97, pp. 3 – 4.) Plaintiff states that he followed the Court's instructions and should not be penalized for complying with such. (Id.) Plaintiff states that his claims are "clear, concise, and meritorious." (Id.)

> Section 1985(3) provides as follows:
>
> If two or more persons . . . conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or * * * in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having or exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

Therefore, to state a claim for relief under Section 1985(3), a plaintiff must allege (1) a person's engagement in a conspiracy; (2) for the purpose of depriving, either directly or indirectly, the plaintiff or class of persons of the equal protection of the laws, or of equal privileges or immunities under the laws; (3) the person's act in furtherance of the conspiracy; (4) the plaintiff's injury in his person or property or deprivation of a right or privilege of a citizen of the United States. Simmons v. Poe, 47 F.3d 1370, 1376 (4th Cir. 1995). Allegations specifying "concrete supporting facts" are required to state a claim for relief under Section 1985(3). Conclusory allegations of conspiracy will not suffice. Simmons v. Poe, 47 F.3d at 1377 ("[W]e have specifically rejected section 1985 claims whenever the purported conspiracy is alleged in a merely conclusory manner, in the absence of concrete supporting facts.") Additionally, federal agencies and officials in their official capacities are immune from suit, but federal officials can be sued in their individual capacities

under Section 1985. <u>Proffitt v. United States</u>, 758 F.Supp. 342, 345 (E.D.Va. 1990)("[T]he United States is not a person within the meaning of § 1985. * * * Nor can plaintiff recover damages against the individual defendants sued in their official capacities."(Citation omitted.)); <u>Baird v. Haith</u>, 724 F.Supp. 367, 384 (D.Md. 1988).

The undersigned finds that Plaintiff has not stated a claim for which relief may be granted under Section 1985(3). Although Plaintiff alleges that he complied with the <u>Bivens</u> Complaint form instructions, the undersigned disagrees. The <u>Bivens</u> Complaint form instructs, in pertinent part, as follows: "State here, as briefly as possible, the facts of your case. Describe what each defendant did to violate your constitutional rights." These instructions clearly provide that a plaintiff must set forth sufficient facts to state his claim against each defendant. Although the form instructs to "state here, as briefly as possible, the facts of your case," this does not indicate that a Plaintiff may omit sufficient facts to state a claim. As to Plaintiff's Section 1985(3) claim, Plaintiff does not allege that Defendants engaged in a conspiracy to deprive him of the equal protection of the laws or of equal privileges and immunities under the laws of the United States. Specifically, Plaintiff has not alleged any facts plausibly suggesting an invidiously discriminatory or racial animus by Defendants. <u>Bray v. Alexandria Women's Health Clinic</u>, 506 U.S. 263, 268, 113 S.Ct. 753, 758, 122 L.Ed.2d 34 (1993)(citing <u>Griffin v. Breckenridge</u>, 403 U.S. 88, 102, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971)(a plaintiff raising a claim pursuant to Section 1985(3) must allege "some racial, or perhaps otherwise class-based, invidiously discriminatory animus lay behind the conspirators' action"); <u>Trerice, v. Summons</u>, 755 F.2d 1081, 1085 (4th Cir. 1985)("neither the Supreme Court nor the Fourth Circuit has identified any classes other than racial or religious classes"). Moreover, Plaintiff provides no concrete facts to demonstrate that Defendants came to a mutual understanding or acted jointly in concert to deprive Plaintiff of any constitutional right.

Plaintiff's allegations of a conspiracy are conclusory. Accordingly, the undersigned respectfully recommends that Defendants' "Renewed Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 90) be granted as to Plaintiff's Section 1985 claim.

**3.     Conditions of Confinement:**

As a general matter, the Eighth Amendment prohibits punishments which "involve the unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. 97, 103, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976)(quoting Gregg v. Georgia, 428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1976)). "It not only outlaws excessive sentences but also protects inmates from inhumane treatment and conditions while imprisoned." Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). Thus, under the Eighth Amendment, sentenced prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety." Wolfish v. Levi, 573 F.2d 118, 125 (2d Cir. 1978), *rev'd on other grounds*, Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). See also Farmer v. Brennan, 511 U.S. 825, 832, 114 S.Ct. 1970, 1976, 128 L.Ed.2d 811 (1994)(Supreme Court noted that Eighth Amendment imposes certain duties upon prison officials to "ensure that inmates receive adequate food, clothing, shelter and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.")(quoting Hudson v. Palmer, 468 U.S. 517, 526-27, 104 S.Ct. 3194, 3200, 82 L.Ed.2d 393 (1984)); Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981)(Court held that only those conditions depriving inmates of "the minimal civilized measure of life's necessities" are sufficiently grave to form the basis of an Eighth Amendment violation). The Eighth Amendment "does not mandate comfortable prisons." Rhodes v. Chapman, 452 U.S. at 349, 101 S.Ct. at 2400. "To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." Id. at 347, 101 S.Ct. at 2399; Shakka v.

14

Smith, 71 F.3d 162, 166 (4th Cir. 1995)(citing Hudson v. McMillian, 503 U.S. 1, 9, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992)); Lopez v. Robinson, 914 F.2d 486, 490 (4th Cir. 1990). To establish a violation of the Eighth Amendment in the context of a challenge to conditions of confinement, an inmate must allege (1) a "sufficiently serious" deprivation under an objective standard, and (2) that prison officials acted with "deliberate indifference" to the inmate's health and safety under a subjective standard. Wilson v. Seiter, 501 U.S. 294, 297-99, 111 S.Ct. 2321, 2323 - 2325, 115 L.Ed.2d 271 (1991); also see King v. Rubenstein, 825 F.3d 206, 218 (4th Cir. 2016)(quoting Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993))("[T]o make out a prima facie case that prison conditions violate the Eighth Amendment, a plaintiff must show both '(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.'"); Iko v. Shreve, 535 F.3d 225, 239 (4th Cir. 2008)(explaining that the above requirements "spring from the text of the amendment itself; absent intentionality, a condition imposed upon an inmate cannot properly be called 'punishment,' and absent severity, a punishment cannot be called 'cruel and unusual.'") To satisfy the objective component, Plaintiff must show that the challenged condition caused or constituted an extreme deprivation. De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003). To demonstrate an "extreme deprivation," a plaintiff "must allege a serious or significant physical or emotional injury resulting from the challenged conditions or demonstrate a substantial risk of such serious harm resulting from [his] exposure to the challenged conditions." Odom v. South Caroline Dept. of Corrections, 349 F.3d 765, 770 (4th Cir. 2003); also see Wilson v. Seiter, 501 U.S. at 298, 111 S.Ct. at 2321(A sufficiently serious deprivation occurs when "a prison official's act or omission . . . result[s] in the denial of the minimal civilized measure of life's necessities."); White v. Gregory, 1 F.3d 267, 269 (4th Cir. 1991)("In *Strickler*, we held that a prisoner must suffer 'serious or significant physical or mental

15

injury' in order to be 'subjected to cruel and unusual punishment within the meaning of the' Eighth Amendment.") To satisfy the subjective component, Plaintiff must demonstrate a "deliberate indifference" to his health and safety by defendants. In particular, Plaintiff must establish that each Defendant "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, supra, 511 U.S. at 837, 114 S.Ct. at 1979. Plaintiff in this case must therefore allege and establish that each Defendant was aware of the excessive risk to Plaintiff's health or safety and each Defendant disregarded that risk.

In addition to the above, Plaintiff's claim are governed by the Prison Litigation Reform Act ("PLRA"). 42 U.S.C. § 1997e(e). The PLRA expressly prohibits the filing of civil actions by prisoners "confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). Although the PLRA does not define "physical injury" and the Fourth Circuit has not provided a definition, other courts have held that the "physical injury" need not be significant, but it must be more than *de minimis*. See Flanory v. Bonn, 604 F.3d 249, 254 (6th Cir. 2010); Mitchell v. Brown & Williamson Tobacco Corp., 294 F.3d 1309, 1312-13 (11th Cir. 2002); Siglar v. Hightower, 112 F.3d 191 (5th Cir. 1997); Zehner v. Trigg, 952 F.Supp. 1318 (S.D. Ind. 1997). In addition, "[a] plaintiff seeking compensatory damages for emotional distress cannot rely on conclusory statements that the plaintiff suffered emotional distress [or] the mere fact that a constitutional violation occurred, but, rather, the testimony must establish that the plaintiff suffered demonstrable emotional distress, which must be sufficiently articulated." Knussman v. Maryland, 272 F.3d 625, 640 (4th Cir. 2001)(quoting Price v. City of Charlotte, 93 F.3d 1241, 1254 (4th Cir. 1996)(internal quotation marks omitted)). In light of the foregoing governing standards and principles, the

16

undersigned will consider Plaintiff's claims of audio torture and food tampering.

        **A.**    ***Audio Torture.***

       In his sworn Complaint, Plaintiff alleges that Defendants Coakley, Gibson, James, Bailey, Coleman, Toney, Duncan, Spencer, Lester, Riffle, Honaker, Denny, Grogan, Ford, Williams, Head, and Smith "systematically tortured [Plaintiff] using an elaborate system of devices to play repeated parts of irritating, nonsensical music." (Document No. 2-1, pp. 4 – 8, 10 - 19, 23 - 25.) Plaintiff further explains that a "soundtrack [was] played simultaneously that sometimes overlap the music with unearthly moans and groans, gun fire, explosions, children screaming in pain and terror." (Id., p. 5.) Plaintiff contends that the above Defendants operated a device that plays "the audio soundtracks throughout the workday." (Id.) Plaintiff contends that the music is "played over and over, twenty-four hours a day, seven days a week, at varying volumes." (Id.) Plaintiff explains that Defendants' conduct has caused him to suffer sleep deprivation, stomach distress, vomiting, debilitating headaches, short-term memory loss, and early dementia-like symptoms. (Id., pp. 1, 5 - 6.)

       In their Motion and Renewed Motion, Defendants first argue that Plaintiff's music/audio allegations lack plausibility because "Plaintiff wants this Court to believe that this magical device can play these sounds whether he was in a cell in SHU, or in a cell in the medical department." (Document No. 45, pp. 19 – 20.) Defendants have filed Declarations stating that "FCI Beckley does not have any system of devices that plays music, moans, gunfire, or any other type of sounds into inmate cells." (Id.) Defendants further note that "mental health providers at FCI Beckley have extensively documented Plaintiff's malingering for secondary gain." (Id.) Thus, Defendants state that "Plaintiff is simply making good on his promise to file lawsuits if he was not given everything he asked for, when he asked for it." (Id.) Finally, Defendants argue that even assuming plaintiff

17

music/audio allegations as true, Plaintiff fails to state a constitutional claim and they are entitled to qualified immunity. (Document Nos. 91, pp. 5 – 6.) Defendants explain that Plaintiff has failed to allege any physical injury resulting from the audio torture as required by the PLRA. (Document No. 45, pp. 26 – 27.)

In Response, Plaintiff argues that his Eighth Amendment claim is "clear, concise, and meritorious." (Document No. 97, p. 3.) Plaintiff further argues that his sworn Complaint states a colorable claim and there are issues of fact. (Document No. 56, pp. 6 – 7 and Document No. 57, p. 7.) Plaintiff contends that Defendants' denials should not be given greater weight than Plaintiff's assertions when both are supported by sworn declarations. (Document No. 57, pp. 7 – 8.) As Exhibits, Plaintiff filed opposing Declarations stating that the torturous music did exist. (Document No. 56-1, pp. 3 – 11, 16 – 31, 34 – 37, 41 - 44.) Plaintiff further notes that the parties should be allowed to engage in discovery. (Document No. 56, p. 6.)

Courts have established qualified immunity for government officials in consideration of a number of factors including the substantial cost of litigation against government officials, the distraction of government officials from their public responsibilities and the disincentive to responsible and capable persons to accept government positions if there is no protection against suits accusing them of misconduct in the performance of their public duties. Government officials performing discretionary functions are generally protected from civil damages liability if their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231, 129 S.Ct. 808, 815, 172 L.Ed.2d 565 (2009)(quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). In determining the validity of a qualified immunity defense, the Court should be guided by a two-prong test: (1) whether the facts viewed in the light most

18

favorable to the Plaintiff establish a deprivation of an actual constitutional right; and (2) whether that right was clearly established at the time of the purported violation. Id. The sequence of the steps is immaterial following Pearson. The Court may exercise discretion in deciding which of the two prongs "should be addressed first in light of the circumstances in the particular case at hand." Id. at 818. "A constitutional right is 'clearly established' when its contours are sufficiently clear that a reasonable official would understand that what he is doing violates that right." Cooper v. Sheehan, 735 F.3d 153, 158 *4th Cir. 2013)(internal quotation marks and citations omitted).

In the instant case, Defendants do not appear to dispute that the Eighth Amendment right to be free from cruel and unusual punishment was clearly established at the time of the allegation violation. Defendants, however, argue that they are entitled to qualified immunity because Plaintiff cannot establish that Defendants violated his constitutional rights.

First, the undersigned finds that the parties disagree as to whether music and sounds were continuously played into Plaintiff's cell.[4] Viewing the facts in a light most favorable to Plaintiff, the undersigned will assume that Defendants did play music or a soundtrack "over and over, twenty-four hours a day, seven days a week, at varying volumes." Although sleep constitutes a basic human need, Plaintiff fails to demonstrate an "extreme deprivation." See Murry v. Edwards County Sheriff's Dep't., 248 Fed.Appx. 993, 998 - 99 (10th Cir. Oct. 1, 2007)(finding that occasional disturbance of sleep by continual lighting, leading sometimes to mild physical

---

[4] Defendants attach Declarations in support of their claim that FCI Beckley does not have any system of devices that plays music, moans, gunfire, or any other type of sounds in inmate cells. (Document No. 44-1, pp. 36, 82, 87, 91, 97, 100, 103-40.) Plaintiff, however, filed opposing Declarations disputing that Defendants had, and used, a device that played torturous music and sounds into his cell. (Document No. 56-1, pp. 3 – 11, 16 – 31, 34 – 37, 41 - 44.) Although Defendants argue that Plaintiff's claim is without merit, such a finding would require this Court to engage in a creditability determination.

symptoms, was not sufficiently serious to result in an Eighth Amendment violation); Nikirk v. Rodriquez, 129 Fed.Appx. 103, 104 (5th Cir. Apr. 20, 2005)(holding that the District Court properly dismissed inmate's claim as frivolous where inmate alleged an Eighth Amendment violation based upon a denial of sleep due to nighttime head-counts where inmate failed to allege serious physical or psychological damage); Harper v. Showers, 174 F.3d 716, 719 (5th Cir. 1999)(stating that "sleep undoubtedly counts as one of life's basic needs); Hunnewell v. Warden, 19 F.3d 7 (1st Cir. 1994)(*unpublished decision*)(holding that inmate's claim that "cell lights are on during the night making it difficult to sleep" and "the ventilation system blows dust and fibers into his cell causing him to have headaches and bloody noses" was insufficient to state a claim under the Eighth Amendment); Ajaj v. United States, 479 F.Supp.2d 501, 512 (D.S.C. 2007)(citing Lunsford v. Bennett, 17 F.3d 1574, 1580 (7th Cir. 1994)("Subjecting a prisoner to a few hours of periodic loud noises that merely annoy, rather than injure the prisoner does not demonstrate a disregard for the prisoner's welfare."); Spivey v. Doria, 1994 WL 97756, * 11 (N.D.Ill.)(finding no constitutional violation where inmate alleged that the noise level caused him to lose sleep and made him irritable; reasoning that "federal courts are not the forums to determine proper lighting and noise levels in jails"); Hutching v. Corum, 501 F.Supp. 1276, 1293(D.Mo. 1980)(finding no constitutional violation despite all-night illumination and high noise levels at night, where inmates failed to allege "evidence indicating that the inmates are unable to sleep at all or that they have developed psychological or physiological problems). To demonstrate an "extreme deprivation," a plaintiff must allege facts of a serious or significant physical or emotional injury. Strickler, 989 F.2d at 1381(an inmate "must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions."); see also White v. Gregory, 1 F.3d 267, 269 (4th Cir. 1993)(prisoner's Eighth Amendment claim should be dismissed if he fails to allege a serious

20

physical or mental injury resulting from the conditions of confinement). Plaintiff alleges that the challenged condition caused him to suffer the following injuries: stomach distress, debilitating headaches, vomiting, short-term memory loss, and early dementia-like symptoms. Such conditions, however, do not arise to the level of a serious or significant injury. See King, supra, 825 F.3d at 218(finding inmate alleged sufficient serious injury where he was forced to have marble implants surgically removed from his penis and complained of tingling and numbness in his penis, pain in his penis, uncomfortable stretching feeling at incision site, stabbing pain in his stomach, and feeling very depressed every time he sees the scarring); Henderson v. Sheahan, 196 F.3d 839, 846 (7th Cir. 1999)(finding plaintiff failed to alleged sufficiently serious injuries where plaintiff complained of breathing problems, chest pains, dizziness, sinus problems, headaches, and loss of energy); DePaola v. Ray, 2013 WL 4451236, * 10 (W.D.Va. July 22, 2013)(finding allegations of humiliation, nausea, and psychological trauma were not sufficiently serious injuries); Wade v. Robinson, 2006 WL 1700908 (W.D.Va. June 16, 2006)(finding plaintiff's allegations of headaches, gastrointestinal distress, and exacerbation of allergies and asthma were not sufficiently serious injury). Further, Plaintiff alleged injuries do not constitute more than a *de minimis* injury. See Chatham v. Adcock, 334 Fed.Appx. 281, 284 (11th Cir. 2009)(finding that a plaintiff's claims of anxiousness, nausea, nightmares, hallucinations, and increase in blood pressure were not enough to satisfy the Section 1997e(e) physical injury requirement); Alexander v. Tippah County, Miss., 351 F.3d 626, 631-32 (5th Cir. 2003)(finding that Section 1997e(e) precluded the plaintiffs from recovering for their emotional and mental injuries where the only physical injuries they had suffered were nausea and vomiting); Davis v. District of Columbia, 158 F.3d 1342, 1349 (D.C. Cir. 1998)(weight loss, appetite loss, and insomnia caused by emotional distress is not a "physical injury" for purposes of the PLRA); Casey v. Brockley, 2015 WL

8008728, * 9 (N.D.N.Y. Nov. 9, 2015)(stating that "numerous courts have held-correctly . . . that physical manifestations of emotional injuries (e.g. anxiety, depression, stress, nausea, hyperventilation, headaches, insomnia, dizziness, appetite loss, weight loss, etc.) are not 'physical injures' for purposes of the PLRA"); Lewis v. Cox, 2011 WL 3106929, * 1(W.D.La. July 25, 2011)(finding that "[n]ausea and lack of sleep are mere symptoms of the alleged emotional distress he suffered and do not, in and of themselves, constitute the type of physical injury required under the PLRA"); Grainger v. Federal Bureau of Prisons, 2009 WL 47127, * 3 (S.D.Tx. Jan. 6, 2009)(finding that plaintiff's complaints of anxiety, stress, emotional distress, loss of appetite, headaches and sleeplessness did not constitute more than a *de minimis* injury); May v. Donneli, 2009 WL 3049613, * 3 (N.D.N.Y. Sept. 18, 2009)(finding that weight loss and an increase in blood pressure did not constitute more than a *de minimis* physical injury); Mitchell v. Horn, 2005 WL 1060658, * 1 (E.D.Pa. May 5, 2005)(finding severe headaches, severe stomach aches, severe dehydration, weight loss, and itching were *de minimis*); Cain v. Virginia, 982 F.Supp. 1132, 1135 n. 3 (E.D.Va. 1997)(depression and painful headaches caused by emotional distress not "physical injury" for purposes of the PLRA). Viewing the facts in a light most favorable to Plaintiff, the undersigned finds that Plaintiff's Eighth Amendment claim should be dismissed because he fails to allege a serious physical or mental injury resulting from the challenged condition of confinement. Accordingly, it is respectfully recommended that Defendants Coakley, Gibson, James, Bailey, Coleman, Toney, Duncan, Spencer, Lester, Riffle, Honaker, Denny, Grogan, Ford, Williams, Head, and Smith's "Renewed Motion to Dismiss, or in the Alternative, for Summary Judgment" be granted as to the above claim.

**B.    *Food Tampering.***

In his sworn Complaint, Plaintiff alleges that Defendants Gibson and James have violated

his constitutional rights by tampering with his food. (Document No. 2-1, pp. 9 - 11.) Plaintiff states that Defendants tampered with his food by doing the following: (1) spitting in his food tray; (2) put hairs in his food tray; (3) pouring "a grayish white powdery substance" in his food; (4) "taking product from his nose and rubbed it into my food;" (5) putting dirt from the floor onto his food, and (6) claiming to have rubbed their penis over his food. (Id.)

In their Renewed Motion, Defendants deny that Defendants Gibson and James tampered with Plaintiff's food. (Document No. 90 and Document No. 45, pp. 23 - 24.) Defendants further argue that "[t]he complaint does not allege the food was poisoned, spoiled, or contaminated." (Document NO. 91, p. 6.) Finally, Defendants note that Plaintiff fails to allege any injury as a result of Defendant's alleged misconduct. (Id.) In response, Plaintiff continues to argue that Defendants Gibson and James tampered with his food in violation of his constitutional rights. (Document Nos. 56, 57, and 97.)

Plaintiff appears to claim that he was occasionally deprived of food because his food was tampered with by either Defendant Gibson or Defendant James. Although food constitutes a basic human need, Plaintiff fails to allege any sufficiently serious deprivation of his basic human need for food as to constitute an Eighth Amendment violation. Shrader v. White, 761 F.2d 975, 986 (4th Cir. 1985)(internal quotation marks and citations omitted)(Inmates have a right to "nutritionally adequate food, prepared and served under conditions that do not present an immediate danger to health and well being of the inmates who consume it."); Lindsey v. O'Connor, 327 Fed.Appx. 319, 321 (3rd Cir. 2009)(finding that "only a substantial deprivation of food to a prisoner" states a viable Eighth Amendment claim). There is no allegation or indication that Plaintiff suffered "serious or significant physical or emotional injury" as a result of the alleged food tampering. See DePaola v. Virginia Department of Corrections, 2016 WL 5415903 (W.D.Va. Sept. 28, 2016)(dismissing

23

prisoner's food tampering claim whether he failed to present facts showing that his health concerns qualified as a serious or significant harm, or that he needed medical care); Grady v. Greenfield, 2016 WL 7668463, * 5 (E.D.N.C. June 27, 2016)(dismissing food tampering claim where inmate "failed to demonstrate a serious deprivation of a basic human need"); Dawson v. Wolf, 2012 WL 5200058, * 6 (D.Md. Oct. 18, 2012)(dismissing inmate's food tampering claim where there was no evidence that the inmate suffered serious or significant physical or emotional injury as a result of the alleged food tampering); also see Mickle v. Moore, 174 F.3d 464, 472 (4th Cir. 1999)(stating that "depression and anxiety are unfortunate concomitant of incarceration; they do not however, typically constitute the extreme deprivations . . . required to make out a conditions-of-confinement claims"). Thus, the undersigned finds that Plaintiff has failed to state a claim under the Eighth Amendment for which relief can be granted. Accordingly, the undersigned respectfully recommends that Defendants' "Renewed Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" be granted as to Plaintiff's claim that Defendants violated his constitutional rights by tampering with Plaintiff's food.

**4.      Excessive Force Claims:**

As stated above, sentenced prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety" under the Eighth Amendment. Wolfish, supra, 573 F.2d at 125. The Court, however, notes that "not all Eighth Amendment violations are the same: some constitute 'deliberate indifference,' while other constitute 'excessive force.'" Thompson v. Commonwealth of Virginia, 878 F.3d 89, 97 (4th Cir. 2017)(citing Whitley v. Albers, 475 U.S. 312, 319-20, 106 S.Ct. 1078, 1085, 89 L.Ed.2d 251 (1986)). In the context of prison officials' use of force upon an inmate, the appropriate inquiry is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of

24

causing harm." <u>Whitley</u>, 475 U.S. at 320-21, 106 S.Ct. at 1078 (citations omitted)(Under the excessive force standard, an inmate must demonstrate that prison officials applied force "maliciously and sadistically for the very purpose of causing harm."); <u>also see</u> <u>Wilkins v. Gaddy</u>, 559 U.S. 34, 130 S.Ct. 1175, 178, 175 L.Ed.2d 995 (2010); <u>Hudson v. McMillian</u>, 503 U.S. 1, 9, 112 S.Ct. 995, 1000, 117 L.Ed.2d 156 (1992) (holding that the excessive force standard applied to an officer who punched an inmate for no apparent reason). In determining whether prison officials acted maliciously and sadistically, the following factors must be balanced: (1) "the need for application of force," (2) "the relationship between that need and the amount of force used," (3) "the threat reasonably perceived by the responsible officials," and (4) "any efforts made to temper the severity of a forceful response." <u>Iko v. Shreve</u>, 535 F.3d 225, 239 (4th Cir. 2008)(citing <u>Whitley</u>, 475 U.S. at 321, 106 S.Ct. at 1078). Although the absence of serious injury may be relevant to the determination of prison officials' culpable intent, the lack of an injury is not dispositive. <u>Id.</u>; <u>also see</u> <u>Thompson</u>, 878 F.3d at 98("While excessive force does require malicious intent, it does not require that the prisoner victim suffer a 'significant injury.' . . . Therefore, a prisoner who suffers a minor, but malicious, injury may be able to prevail on an excessive force claim but not on a deliberate indifference claim."); <u>Wilkins</u>, 559 U.S. at 40, 130 S.Ct. at 1179("The 'core judicial inquiry' . . . [is] not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'"); <u>Hill v. Crum</u>, 727 F.3d 312, 321 (4th Cir. 2013)("[T]he nature of the force, rather than the extent of the injury, is the relevant inquiry.")

Furthermore, the Eighth Amendment does not prohibit "*de minimis* uses of physical force, provided that the use of force is not of the sort repugnant to the conscience of mankind." <u>Harris v. Salley</u>, 339 Fed.Appx. 281, 284 (4th Cir. 2009)(citing <u>Hudson</u>, 503 U.S. at 9 - 10, 112 S.Ct. at

1000). Thus, an inmate who "complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim." <u>Wilkins</u>, 559 U.S. at 38, 130 S.Ct. at 1178(citations omitted). It is well recognized, however, that "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." <u>Hudson</u>, 503 U.S. at 9, 112 S.Ct. at 1000 ("This is true whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury."); <u>also see</u> <u>Thompson</u>, 878 F.3d at 101("[W]hen use of force is malicious or repugnant, a plaintiff need to suffer anything significant to establish an excessive force claim.") Although every "malevolent touch" by a prison guard will not give rise to a federal cause of action, "[a]n inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." <u>Wilkins</u>, 559 U.S. at 38, 130 S.Ct. at 1179; <u>Hudson</u>, 503 U.S. at 9, 112 S.Ct. at 1000.

      **A.**     ***Defendant Coleman.***

      In his sworn Complaint, Plaintiff alleges that Defendant Coleman entered his cell and hit Plaintiff in the face without just cause. (Document No. 2-1, p. 14.) Specifically, Plaintiff states that Defendant Coleman became angry and belligerent toward Plaintiff during the months preceding the incident. (<u>Id.</u>) Plaintiff states that on August 14, 2015, at approximately 4:10 a.m., "after approximately an hour of angry exchanges at my door of Coleman kicking, pounding and rattling his keys, him having turned on and left on my lights, Coleman abruptly turned off my lights and entered by cell." (<u>Id.</u>) Plaintiff states that "almost immediately upon entering my cell, Coleman back-handed me across the right side of my face and eye." (<u>Id.</u>) Plaintiff asserts that "as quickly as Coleman entered my cell and struck me, he exited my cell, locked it, and walked away." (<u>Id.</u>)

26

Plaintiff contends that Defendant Coleman's improper use of force caused swelling and bruising to Plaintiff's face and eye. (Id.)

In their Renewed Motion, Defendants argue that Plaintiff's above claim must be dismissed "because it is false." (Document No. 45, p. 21.) Defendants explain "Plaintiff's claim about being struck by Officer Coleman could not possibly have occurred as reported by Plaintiff" because Defendant Coleman did not have access to Plaintiff's cell. (Document No. 91, pp. 8 – 9 and Document No. 45, pp. 21 – 23.) Defendants explain that for security reasons, SHU shift officers do not have keys to individual cells and policy requires that at least two staff members be present any time a SHU cell is opened. (Document No. 45, p. 21.) Defendants further explain that Plaintiff alleges the incident occurred at 4:10 a.m. and a "SHU officer working early in the morning hours by himself does not have cell door keys or access to those keys." (Id.) Second, Defendants note that Plaintiff initially claimed he was assault by Lt. Gibson and then "changed his story to state that Officer Coleman did it." (Id., p. 22.) Defendants state that "[t]his current version was thoroughly investigated and Plaintiff's allegation was found to be fabricated." (Id.) Finally, Defendants argue that "the physical evidence shows Plaintiff lied about being assaulted." (Id.) Defendants note that Plaintiff was evaluated by medical staff at 9:45 a.m., who only noted a small amount of redness over this right eye. (Id.) Defendants state that the nurse spoke to Plaintiff during her rounds at 7:00 a.m. and "the nurse clearly remembers that there was no swelling or bruising under Plaintiff's right eye at that time." (Id.) Defendants conclude that "[e]ven without the iron clad proof that Officer Coleman could not have assaulted Plaintiff because he did not have any way to get into Plaintiff's cell, the physical evidence discredits Plaintiff's claim." (Id.) Defendants contend that "Plaintiff cannot defeat Defendant Coleman's right to qualified immunity as plaintiff's opposition to summary judgment motion are self-serving conclusions." (Document No.

27

91, pp. 8 - 9.) In support, Defendants attach the Declaration of Defendant Coleman stating, in pertinent part, as follows:

> 7.     I did not strike Plaintiff on August 14, 2015, as he alleges. I did work SHU on that date and was working alone at the time Plaintiff alleges this occurred. I did not unlock Plaintiff's cell, strike him, and then lock the cell door back. In fact, this would have been impossible for me to do as I did not have keys to unlock any cells at that time because I was the lone office in SHU on that shift.

> 8.     Because there is only one officer in SHU during the early morning hours, the SHU officer does not have keys to the individual cells or access to those keys at that time. The keys are stored in another area of the institution during that time period. This is done for security reasons such as preventing a single officer from getting overpowered by an inmate and to make sure more than one staff member is present when cell doors are opened. It is not until around 6:15 a.m., when additional SHU staff arrives with keys, that SHU staff have keys to the individual cells.

(Document No. 44-1, pp. 109-10.)

In Response, Plaintiff argues that he was assaulted by Defendant Coleman. (Document No. 57, p. 4.) Plaintiff states that Defendant Coleman "back-handed me across the right side of my face . . . causing injury (swelling of my cheek, eye, eyebrow/forehead, all with serious bruising - - my blackened right eye filled with blood and swelled shut) and psychological damage." (Document No. 56, pp. 7 – 9.) Plaintiff argues that Defendants are requesting that the Court determine Plaintiff's sworn allegations to be without merit. (Id., p. 8.) Plaintiff notes that the foregoing constitutes an issue of fact. (Id.) Plaintiff attaches a copy of his Declaration disputing statements set forth in Defendant Coleman's Declaration. (Document No. 56-1, pp. 20 – 21, 6 - 8.) Specifically, Plaintiff states that Defendant Coleman did have access to keys that would open is cell door. (Id., pp. 7 – 8.)

In arguing that Defendant Coleman is entitled to qualified immunity, Defendants appear to acknowledge that Plaintiff's Eighth Amendment right not to be subjected to excessive force was

28

clearly established at the time of the alleged incident. Defendant Coleman, however, argues that he is entitled to qualified immunity because Plaintiff cannot establish that he violated Plaintiff's constitutional right. The undersigned finds that there are genuine issues of material fact. As explained above, Defendants argue that Plaintiff's claim that Defendant Coleman struck him is "false." Defendant Coleman declares that he could not have struck Plaintiff because he did not have access to the keys to Plaintiff's cell. Plaintiff's sworn Complaint and Declaration, however, state that Defendant Coleman did have access to his cell and Defendant Coleman entered the cell and struck Plaintiff without cause. Citing Harris v. Home Sales, Inc., 499 Fed.Appx. 285, 294 (4th Cir. 2012), Defendants argue that the Court should disregard Plaintiff's sworn statements because they are "self-serving conclusions." In Harris, the Fourth Circuit noted that plaintiff failed to reconcile an inconsistency within his own statements and conduct. Harris, 499 Fed.Appx. at 294. Thus, the Fourth Circuit stated that "[a]lthough we do not make credibility determinations at the summary judgment phase, we should also not find a genuine dispute of material fact based solely on [plaintiff's] self-serving testimony." Id.(citing Williams v. Giant Food, Inc., 370 F.3d 423, 433 (4th Cir. 2004). In Williams, the Fourth Circuit rejected plaintiff's testimony as a "self-serving *opinion*" and stated that "absent objective corroboration, [it cannot] defeat summary judgment." Id. at 433. The Fourth Circuit, however, credited plaintiff's other testimony regarding *facts* even though such was in plaintiff's favor. Id. at 432. In the instant case, Defendant Coleman is clearly requesting that this Court make a credibility determination as to an issue of material fact. Plaintiff declares that Defendant Coleman had access to his cell, entered his cell, and struck Plaintiff in the face. Such a statement by Plaintiff concerns facts, not an opinion or conclusion. Further, Plaintiff's statement does not create inconsistency within his own statements. Plaintiff's sworn statements of fact are no more self-serving than the sworn statements of facts provided by Defendants. Finally,

the undersigned notes that parties have not yet engaged in discovery and Plaintiff alleges that once

the discovery process begins, he will be able provide corroborating evidence/witness statements.

Accordingly, the undersigned finds there is an issue of material fact concerning whether Defendant

Coleman (1) had access to Plaintiff's cell, (2) entered Plaintiff's cell, and (3) struck Plaintiff in the

face.

Viewing the facts in a light most favorable to Plaintiff, a jury could reasonably find that

Defendant Coleman used excessive force in violation of the Eighth Amendment. Concerning the

first <u>Whitley</u> factor (the need for application of force), the undersigned finds this factor weighs

strongly in favor of Plaintiff. Plaintiff states "after approximately an hour of angry exchanges at

my door of Coleman kicking, pounding, and rattling his keys, . . . Coleman abruptly turned off my

lights and entered my cell . . . [and] back-handed me across the right side of my face and eye."

(Document No. 2-1, p. 14.) There is no allegation or indication that the use of force was necessary.

Consideration of the second factor (the relationship between the need and amount of force used),

weighs in Plaintiff's favor. Since there is no allegation or indication that force was necessary, the

force used by Defendant Coleman was necessarily excessive in relation to the need. <u>Tedder v.</u>

<u>Johnson</u>, 527 Fed.Appx. 269, 273 (4th Cir. 2013)(Since the facts "permit the conclusion that no

force was necessary at all, the *Whitley* 'amount of force' factor favors [plaintiff] as well.")

Considering the third factor (the threat reasonably perceived by the responsible official), such

weighs in Plaintiff's favor. Again, there is no allegation or indication that Plaintiff posed a threat.

The final factor (any efforts made to temper the severity of a forceful response) appears to be a

draw between the parties. Defendant Coleman states that Plaintiff was evaluated by medical staff

at 9:45 a.m. Although Plaintiff's eye was evaluated by medical staff, such occurred more than five

hours after the alleged incident. The undersigned further finds that Plaintiff's allegations support

a finding that Defendant Coleman used more than *de minimis* force against Plaintiff as Plaintiff states that he suffered bruising and swelling to his eye and emotional distress. See McMillian, 503 U.S. at 9, 112 S.Ct. at 995(finding force to be beyond *de minimis* when sufficient to cause bruising, swelling, loosened teeth); Wilkins, 559 U.S. at 40, 130 S.Ct. at 1179(force not *de minimis* where sufficient to cause bruising, lower back pain, migraines, dizziness, and mental anguish). Viewing the facts in a light most favorable to Plaintiff, the undersigned finds that a reasonable jury could credit Plaintiff's sworn statements and find that Defendant Coleman maliciously and sadistically used force upon Plaintiff for the very purpose of causing harm in violation of the Eighth Amendment. Accordingly, the undersigned respectfully recommends that Defendants' "Renewed Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" be denied as to the above claim.

**B.    *Defendant Harvey.***

In his sworn Complaint, Plaintiff alleges that Defendant Harvey[5] intentionally injured Plaintiff's wrists when placing handcuffs on him and intentionally injured Plaintiff's lower extremities when pushing him through the prison in his wheelchair. (Id., p. 24.) Plaintiff alleges that Defendant Harvey clamps the handcuffs so tightly around Plaintiff's wrists that bruising results. (Id.) Plaintiff states that Defendant Harvey intentionally pushes Plaintiff's wheelchair into bedframes, counters, and door edges for the purpose of causing Plaintiff "pain and injury to [his]

---

[5] In their Renewed Motion, Defendants incorrectly state that the allegations concerning the wheelchair and handcuffs were asserted against Defendant Akers. (Document No. 91, p. 9.) In Defendants' initial Motion, Defendants correctly argue that the allegations concerning the wheelchair and handcuffs were asserted against Defendant Harvey. (Document No. 45, pp. 25.) Since Defendants incorporate their initial Motion into their Renewed Motion, the undersigned will assume Defendants arguments apply to Defendant Harvey instead of Defendant Akers. The undersigned notes that Plaintiff's Complaint contains no allegations concerning the wheelchair and handcuffs as to Defendant Akers. (Document No. 2-1.)

lower extremities." (Id.) Plaintiff asserts that Defendant Harvey "trades high fives" with other staff members after "he hurts me and causes me pain." (Id.)

In their Renewed Motion, Defendants argue that Plaintiff's above claim must be dismissed for failure to state a claim. (Document No. 91, pp. 9 – 10 and Document No. 45, p. 21.) Concerning the use of handcuffs, Defendants argue that Plaintiff's "handcuffs allegation are merely legal conclusions in violation of the Twombly pleading standard." (Document No. 91, p. 9.) Although Defendants acknowledge that the use of handcuffs can involve excessive force in violation of the Eighth Amendment, Defendants argue Plaintiff's allegations are inadequate to state such a claim. (Id.) Citing Valade v. City of New York, 949 F.Supp.2d 519 (S.D.N.Y. 2013), Defendants argue that the Court must consider whether "1) the handcuffs were unreasonably tight; 2) the defendants ignored the [plaintiff's] pleas that the handcuffs were too tight; and 3) the degree of injury to the wrists." (Id.) Defendants argue that Plaintiff's allegations fail to establish a constitutional violation because Plaintiff does not allege that Defendant Harvey ignored any requests by Plaintiff to loosen the handcuffs. (Id.) Additionally, Defendant Harvey "denies that he ever intentionally . . . injured Plaintiff's wrists when placing him in handcuffs." (Document No. 45, p. 25.)

As to allegations that Defendant Harvey pushed Plaintiff's wheelchair in objects injuring Plaintiff's lower extremities, Defendants argue that such allegations do not establish an Eighth Amendment violation. (Id.) Defendant Harvey argues that such an allegation "falls into the category of those malevolent touches which do not give rise to a federal cause of action." (Id.) Defendant Harvey notes that "[a]gain, there is no allegation that plaintiff complained or asked defendant [Harvey] to stop." (Id., p. 10.) Additionally, Defendant Harvey "denies that he ever intentionally pushed Plaintiff into things in this wheelchair." (Document No. 45, p. 25.) Defendant Harvey acknowledges that "he would have pushed Plaintiff in his wheelchair during cell moves

32

and other times, but never intentionally rammed him into anything." (Id.) Defendant Harvey further states that he does not recall that "Plaintiff ever received any injury from allegedly being pushed into anything in his wheelchair." (Id.) Defendant Harvey notes that Plaintiff's above allegations are consistent with "Plaintiff's manipulation of the truth." (Id.) According, Defendant Harvey argues that he is entitled to qualified immunity as to the above claims because Plaintiff's allegations fail to establish a constitutional violation. (Id.) In support, Defendants attach the Declaration of Defendant Harvey stating, in pertinent part, as follows:

> 5.    Additionally, Plaintiff's claims that I intentionally put him in handcuffs that were too tight and intentionally ran him into things in his wheelchair are false. I certainly would have placed Plaintiff in handcuffs when transferring him from one cell to another and would also have pushed him in this wheelchair to other locations. However, I never intentionally pushed Plaintiff into things or harmed Plaintiff in any way, and I am not aware of any injuries Plaintiff allegedly received from handcuffs being too tight or being pushed into things in his wheelchair.

(Document No. 44-1, p. 131.)

In Response, Plaintiff argues that "denial by the defendants should not be given greater weight than [Plaintiff's] assertions when considering both are supported by sworn declarations." (Document No. 57, p. 8.) In addition to his sworn Complaint, Plaintiff files a Declaration stating as follows: "Not only did Harvey hurt me when clamping handcuffs around my wrist and ankles, and not only did he run my wheelchair into objects to cause me pain, he did these things intentionally and gleefully. I dispute Harvey's denials as capricious lies." (Document No. 56-1, p. 32.)

In arguing that Defendant Harvey is entitled to qualified immunity, Defendants appear to acknowledge that Plaintiff's Eighth Amendment right not to be subjected to excessive force was clearly established at the time of the alleged incident. Defendant Harvey, however, argues that he

33

is entitled to qualified immunity because Plaintiff cannot establish that he violated Plaintiff's constitutional right. The undersigned finds that there are genuine issues of material fact. As explained above, Defendants argue that Plaintiff's claim that Defendant Harvey intentionally put him in handcuffs that were too tight and intentionally ran him into objects in his wheelchair were "false." Defendants further argue that Plaintiff's "handcuffs allegation are merely legal conclusions in violation of the <u>Twombly</u> pleading standard." The undersigned, however, disagrees. Plaintiff declares under the penalty of perjury that Defendant Harvey intentionally placed handcuffs too tightly on Plaintiff's hands and ankles, and deliberately pushed Plaintiff's wheelchair into objects for the purpose of causing harm. Although Defendant Harvey declares that these allegations are "false," the undersigned will not make a credibility determination or weigh the evidence to determine the truth of the matter. Accordingly, the undersigned finds there are issues of material fact concerning whether Defendant Coleman intentionally place handcuffs too tightly on Plaintiff's wrist and ankles, and intentionally pushed Plaintiff's wheelchair into objects.

Viewing the facts in a light most favorable to Plaintiff, a jury could reasonably find that Defendant Harvey used excessive force in violation of the Eighth Amendment. The undersigned will first address Plaintiff's claim that Defendant Harvey maliciously and sadistically applied handcuffs too tightly for the purpose of harming Plaintiff. Concerning the first <u>Whitely</u> factor (the need for application of force), the undersigned finds this factor weighs in favor of Defendant Harvey. It is reasonable that the application of handcuffs is necessary and appropriate when moving an inmate from one area of a prison to another. Additionally, Plaintiff does not dispute that the application of handcuff was necessary. Consideration of the second <u>Whitely</u> factor (the relationship between the need and amount of force used), weighs in Plaintiff's favor. Viewing the facts in a light most favorable to Plaintiff, the facts indicate that Defendant Harvey applied the

34

handcuffs more tightly than necessary. Considering the third <u>Whitely</u> factor (the threat reasonably perceived by the responsible official), such weighs in Plaintiff's favor. There is no allegation or indication that Plaintiff posed a threat or had a history of slipping or attempting to free himself from restraints. The final factor (any efforts made to temper the severity of a forceful response) appears to be a draw between the parties. Citing non-binding authority, Defendant Harvey argues that Plaintiff's claim must be dismissed because there is no indication that Defendant Harvey ignored any request by Plaintiff to loosen the handcuffs. While the act of loosening handcuffs after notification that the restrains are too tight may be relevant to the <u>Whitely</u> factors, such is not dispositive. The undersigned further finds that Plaintiff's allegations support a finding that Defendant Harvey used more than *de minimis* force against Plaintiff as Plaintiff states he suffered bruising to his wrists, aggravation of a preexisting nerve condition, and emotional distress. <u>See</u> <u>McMillian</u>, 503 U.S. at 9, 112 S.Ct. at 995(finding force to be beyond *de minimis* when sufficient to causing bruising, swelling, loosened teeth); <u>Wilkins</u>, 559 U.S. at 40, 130 S.Ct. at 1179(force not *de minimis* where sufficient to cause bruising, lower back pain, migraines, dizziness, and mental anguish). Viewing the facts in a light most favorable to Plaintiff, the undersigned finds that a reasonable jury could credit Plaintiff's sworn statements and find that Defendant Harvey maliciously and sadistically applied Plaintiff's handcuffs too tightly for the very purpose of causing harm in violation of the Eighth Amendment. Accordingly, the undersigned respectfully recommends that Defendants' "Renewed Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" be denied as to the above claim.

Next, the undersigned will address Plaintiff's claim concerning Defendant Harvey pushing Plaintiff's wheelchair into objects. Viewing the facts in a light most favorable to Plaintiff, a jury could reasonably find that Defendant Harvey used excessive force in violation of the Eighth

Amendment. Defendant Harvey argues that Plaintiff's wheelchair claim "falls into the category of those malevolent touches which do not give rise to a federal cause of action." Although Plaintiff complains of a push or shove, such does not fall in the category of *de minimis* force or a "push or shove that causes no discernible injury" because Plaintiff alleges he suffered injuries to his lower extremities and emotional distress. See McMillian, 503 U.S. at 9, 112 S.Ct. at 995(finding force to be beyond *de minimis* when sufficient to causing bruising, swelling, loosened teeth); Wilkins, 559 U.S. at 40, 130 S.Ct. at 1179(force not *de minimis* where sufficient to cause bruising, lower back pain, migraines, dizziness, and mental anguish). Furthermore, Plaintiff alleges that Defendant Harvey maliciously and sadistically pushed or shoved his wheelchair into objects on multiple occasions for the very purpose of causing harm to Plaintiff. The undersigned will therefore consider the Whitley factors. Concerning the first factor (the need for application of force) and second factor (the relationship between the need and amount of force used), the undersigned finds these factors weigh strongly in favor of Plaintiff. Plaintiff states that Defendant Harvey intentionally pushed Plaintiff's wheelchair into bedframes, counters, and door edges for the purpose of causing Plaintiff "pain and injury to [his] lower extremities." (Document No. 2-1, p. 24.) Plaintiff asserts that Defendant Harvey "traded high fives" with other staff members in celebration for causing pain to Plaintiff. (Id.) Although Defendant Harvey states that it was necessary for him to push Plaintiff in his wheelchair to different prison locations, there is no allegation or indication that it was necessary to push Plaintiff into objects while in route. Considering the third Whitely factor (the threat reasonably perceived by the responsible official), such weighs in Plaintiff's favor. There is no allegation or indication that Plaintiff posed a threat while Defendant Harvey was pushing Plaintiff's wheelchair. The final factor (any efforts made to temper the severity of a forceful response) appears to be a draw between the parties. Citing non-

36

binding authority, Defendant Harvey argues that Plaintiff's claim must be dismissed because there is "no allegation that Plaintiff complained or asked Defendant [Harvey] to stop." (Document No. 91, p. 10.) While acting more cautiously after notification of harm or injury may be relevant to the Whitely factors, such is not dispositive. Viewing the facts in a light most favorable to Plaintiff, the undersigned finds that a reasonable jury could credit Plaintiff's sworn statements and find that Defendant Harvey maliciously and sadistically pushed Plaintiff's wheelchair into objects for the very purpose of causing harm in violation of the Eighth Amendment. Accordingly, the undersigned respectfully recommends that Defendants' "Renewed Motion to Dismiss, or in the Alternative, for Summary Judgment" be denied as to the above claim.

**5.    Verbal Abuse/Sexual Harassment:**

In his sworn Complaint, Plaintiff asserts that Defendant Gibson made verbal threatens against Plaintiff's physical safety. (Document No. 2-1, pp. 7 - 10.) Next, Plaintiff states that Defendants James, Spencer, and Riffle placed Plaintiff's life in imminent danger by spreading false rumors that Plaintiff is a child molester. (Id., pp. 11, 16 and 18.) Finally, Plaintiff complains that Defendant James made "unwanted sexual innuendoes and overtones while [Plaintiff] was in the shower." (Id., pp. 11 - 12.) Specifically, Plaintiff alleges that Defendant James would act as though he was masturbating and make the following statements: (1) "Oh, I like big butts;" (2) "Yeah, baby, spread those a*s cheeks;" and (3) "Oooo yeah, that's what I like, push that soap up in that crack." (Id., p. 12.)

In their Renewed Motion, Defendants argue that Plaintiff's above claim must be dismissed for failure to state a claim. (Document No. 91, p. 7 and Document No. 45, pp. 24 - 25.) Defendants argue that "Plaintiff's allegations that some staff spread false rumors about him being a child molester is simply not true." (Document No. 45, p. 24.) In support Defendants attach Declarations

37

by Defendants Gibson, James, Spencer, and Riffle. (Document No. 44-1, pp. 81-84, 100-05, 116-17.) Defendants contend that "staff members did not speak to other inmates about Plaintiff's crimes, nor did they try to get others to act out against Plaintiff because of his history." (<u>Id.</u> and Document No. 45, pp. 24 – 25.) Defendants note that Plaintiff was "celled alone during the majority of his short time at FCI Beckley, so no other inmates were with Plaintiff to act out against him." (<u>Id.</u>, p. 25.) Defendants further emphasis that "Plaintiff does not allege he was harmed in any way by the supposed disclosure by staff." (<u>Id.</u>) Finally, Defendants deny that Defendant James made sexual comments to Plaintiff. (<u>Id.</u>) In support, Defendants attach a Declaration from Defendant James. (Document No. 44-1, pp. 103-04.)

In Response, Plaintiff argues that "denial by the defendants should not be given greater weight than [Plaintiff's] assertions when considering both are supported by sworn declarations." (Document No. 57, p. 8.) Plaintiff continues to claim that Defendants put his life at risk by "falsely labeling me a 'child molester.'" (Document No. 56, p. 9.) Plaintiff alleges that "defendants were setting me up to be killed." (<u>Id.</u>) Plaintiff further files Declarations in Opposition to Declarations filed by Defendants Gibson, James, Spencer, and Riffle. (Document No. 57, pp. 8 – 9 and Document Nos. 56-1, pp. 3–8, 18–19, 24, 41–44.)

Assuming Plaintiff's allegations as true, Plaintiff fails to state a constitutional claim. Plaintiff's allegations of verbal abuse or verbal harassment by Defendants Gibson, James, Spencer, and Riffle are insufficient to state a constitutional deprivation. <u>See</u> <u>Henslee v. Lewis</u>, 153 Fed. Appx. 178 (4th Cir. 2005)(Inmate did not state a cognizable claim under Section 1983 when he alleged that jail employee incited other inmates to attack him, but did not contend that any such attack occurred.); <u>Langston v. Fleming</u>, 38 F.3d 1213 (4th Cir. 1994)(unpublished opinion)(Prisoner failed to state a claim where he merely alleged that guards endangered his life

38

by informing other inmates that he was charged with rape); <u>Ivey v. Wilson</u>, 832 F.2d 950, 954-55 (6th Cir. 1987)(finding that alleged verbal abuse or harassment of an inmate did not amount to an Eighth Amendment violation); <u>Lindsey v. O'Connor</u>, 327 Fed.Appx. 319 (3rd Cir. 2009)(holding that "[v]erbal harassment of a prisoner, although distasteful, does not violate the Eighth Amendment"); <u>McBride v. Deer</u>, 240 F.3d 1287, 1291 n.3 (10th Cir. 2001) (explaining that "acts or omissions resulting in an inmate being subjected to nothing more than threats and verbal taunts do not violate the Eighth Amendment"); <u>Siglar v. Hightower</u>, 112 F.3d 191, 193 (5th Cir. 1997)(verbal abuse by a prison guard does not give rise to a cause of action under § 1983); <u>Purcell v. Coughlin</u>, 790 F.2d 263, 265 (2nd Cir. 1986)(stating that name-calling does not rise to the level of a constitutional violation); <u>Collins v. Cundy</u>, 603 F.2d 825, 827 (10th Cir. 1979)(finding that a sheriff's threats to hang a prisoner were insufficient to state a constitutional deprivation); <u>Chronister v. Byars</u>, 2014 WL 1233029, * 7 (D.S.C. March 25, 2014), *appeal dismissed* (April 29, 2014)(finding that verbal harassment, disrespectful and assaultive comments did not violate the Eighth Amendment); <u>Morrison v. Martin</u>, 755 F. Supp. 683, 687 (E.D.N.C.) ("[w]ords by themselves [including verbal abuse or profanity] do not state a constitutional claim, without regard to their nature"), <u>aff'd</u>, 917 F.2d 1302 (4th Cir. 1990). As to Defendant James, Plaintiff further complains that Defendant James made "unwanted sexual innuendoes and overtones while [Plaintiff] [was] in the shower." (<u>Id.</u>, pp. 11 - 12.) There is no allegation or indication that Defendant James made any type of physical contact with Plaintiff. It is well recognized that sexually harassment, absent contact or touching, is insufficient to state a constitutional claim. <u>See</u> <u>Jackson v. Holley</u>, 666 Fed.Appx. 242, 244 (4th Cir. 2016)(quoting <u>Austin v. Terhune</u>, 367 F.3d 1167, 1171 (9th Cir. 2004)("[A]lthough prisoners have a right to be free from sexual abuse, whether at the hands of fellow inmates or prison guards, the Eighth Amendment's protections do not

necessary extend to mere verbal sexual harassment"); Morales v. Mackalm, 278 F.2d 126, 132 (2nd Cir. 2002)(abrogated on other grounds)(allegations that a prison guard asked an inmate to have sex with her and to masturbate in front of her did not rise to the level of an Eighth Amendment violation); Barney v. Pulsipher, 143 F.3d 1299, 1311, n. 11 (10th Cir. 1986)(allegations that a jailer subjected females prisoners to severe verbal sexual harassment was not sufficient to state a claim under the Eighth Amendment); Howard v. Everett, 2000 WL 268493, * 1 (8th Cir. March 10, 2000)(sexual comments and gestures by prison guards did not constitute an Eighth Amendment violation); Murray v. United States Bureau of Prisons, 1997 WL 34677, * 3 (6th Cir. Jan. 28, 1997)(offensive remarks regarding a transsexual prisoner's body appearance and presumed sexual preference failed to state an Eighth Amendment claim); Wilder v. Payne, 2014 WL 6772265, *7-8(N.D.W.Va. Dec. 1, 2014)(finding that a prison guard's offensive and unprofessional sexual comments failed to state an Eighth Amendment claim). Based on the foregoing, the undersigned finds that Plaintiff's claims of verbal abuse, verbal harassment, and sexual harassment fail to state a cognizable claim under the Eighth Amendment for which relief can be granted. Accordingly, the undersigned respectfully recommends that Defendants' "Renewed Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" be granted as to Plaintiff's claims of verbal abuse, verbal harassment, and sexual harassment.

**6.    No Right to Privacy in Cell:**

In his sworn Complaint, Plaintiff asserts that Defendant Gibson "wrecks his cell" during shake downs. (Document No. 2-1, pp. 8.) In their Renewed Motion, Defendants argue that "Plaintiff's claim that staff wrecked his cell or left his cell in a mess does not allege a constitutional violation." (Document No. 90 and Document No. 45, p. 24.) In response, Plaintiff continues to

argue that the wrecking of his cell constituted a constitutional violation. (Document No. 56 and 57.)

A prisoner's right to privacy is necessarily limited as a result of his incarceration. The United States Supreme Court has held that "society is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell and that, accordingly, the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell." Hudson v. Palmer, 468 U.S. 517, 526, 104 S.Ct. 3194, 3200, 82 L.Ed.2d 393 (1984)(explaining that "[u]nfettered access to [inmates'] cells by prison officials . . . is imperative if drugs and contraband are to be ferreted out and sanitary surrounds are to be maintained."). Thus, an inmate has no right to privacy concerning his cell. To the extent Plaintiff claims that Defendants violated his constitutional rights by "wrecking" his cell during a search or "shakedown," such a claim is without merit. Accordingly, the undersigned respectfully recommends that Defendants' "Renewed Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" be granted as to Plaintiff's claim that his cell was "wrecked" during a search.

**7.    Mail Tampering/Access to Court:**

In his sworn Complaint, Plaintiff asserts that Defendants Gibson, James, Akers tampers with, and delays, his legal mail. (Document No. 2-1, pp. 9, 11, 20.) Plaintiff states that Defendant Gibson delays his legal mail by holding it for a "number of days." (Id., p. 9.) Plaintiff complains that Defendant Akers delays affixing postage to his legal mail. (Id., p. 20.) As a result of the foregoing, Plaintiff complains that he "struggles daily to meet Court deadlines and requirements." (Id., p. 9.) In their Renewed Motion, Defendants deny tampering with Plaintiff's mail. (Document No. 91, p. 7 and Document No. 45, p. 24.) Defendant further argue that even accepting the allegations as true, Plaintiff fails to state a constitutional claim because Plaintiff's legal work was

41

not hindered. (Document No. 91, p. 7.) In response, Plaintiff continues to argue that the tampering of legal mail by Defendants constituted a constitutional violation. (Document Nos. 56, 57, and 97.)

The United States Supreme Court discussed the right of prisoners to access to the Courts in Lewis v. Casey, 518 U.S. 343, 116 S.Ct. 2174, 135 L. Ed.2d 606 (1996). Making it perfectly clear that prisoners do not have a right *per se* to a law library or legal assistance, the Lewis Court explained and elaborated upon its earlier decision in Bounds v. Smith, 430 U.S. 817, 97 S. Ct. 1491, 52 L.Ed.2d 72 (1977), as follows:

> The right that Bounds acknowledged was the (already well-established) right of *access to the courts*. In the cases to which Bounds traced its roots, we had protected that right by prohibiting state prison officials from actively interfering with the inmates' attempts to prepare legal documents, or file them and by requiring state courts to waive filing fees, or transcript fees for indigent inmates. * * * In other words, prison law libraries and legal assistance programs are not ends in themselves, but only the means for ensuring "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts. * * * Insofar as the right vindicated by Bounds is concerned, "meaningful access to the courts is the touchstone," and the inmate therefore must go one step further and demonstrate that the alleged shortcomings in the law library or legal assistance program hindered his efforts to pursue a legal claim. He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which because of deficiencies in the prison's legal assistance facilities, he could not have known. Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable even to file a complaint.

Lewis, 518 U.S. at 350 - 51, 116 S.Ct. at 2179 - 80. [Emphasis in opinion; citations omitted.] Many Courts, including the Fourth Circuit, have found that a cause of action is stated for violation of the right of meaningful access to the Courts where it is alleged that prison officials confiscated and/or destroyed legal materials or papers and hindered efforts to pursue legal claims. Carter v. Hutto, 781 F.2d 1028, 1031 - 32 (4th Cir. 1986)(Finding that the alleged seizure and destruction of an inmate's legal materials relating to his application for a writ of *habeas corpus* stated "a valid claim based on the deprivation of access to the courts, a right of vital importance to prisoners and to the

42

integrity of our criminal justice system."); <u>Oxendine v. Williams</u>, 509 F.2d 1405, 1407 (4th Cir. 1975)(Finding that the confiscation of legal materials and the denial of writing supplies could constitute an unconstitutional interference with an inmate's right of access to the courts.). However, "the temporary deprivation of an inmate's legal materials does not, in all cases, rise to a constitutional deprivation." <u>Vigliotto v. Terry</u>, 873 F.2d 1201, 1202 - 1203 (9th Cir. 1989)(Plaintiff was not denied his right of access to the courts when prison officials confiscated his legal materials for three days and threatened to destroy the materials if plaintiff did not have them removed and the materials were then lost.)

It is clear from the <u>Lewis</u> Court's decision that a complaint alleging deprivation of the right of access to the Courts must include a statement indicating some palpable actual injury. The <u>Lewis</u> Court stated in its Syllabus as follows:

> [T]o establish a <u>Bounds</u> violation, the actual injury that an inmate must demonstrate is that the alleged shortcomings in the prison library or legal assistance program have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. This requirement derives ultimately from the doctrine of standing. Although <u>Bounds</u> made no mention of an actual injury requirement, it can hardly be thought to have eliminated that constitutional prerequisite.

<u>Lewis</u>, 518 U.S. at 343, 116 S.Ct. 2176. The <u>Lewis</u> Court explained further as follows:

> . . . <u>Bounds</u> does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

<u>Lewis</u>, 518 U.S. at 355, 116 S.Ct. at 2182. Accordingly, where it is alleged, as it is in this case, that prison officials withheld legal materials and hindered efforts to pursue legal claims, it must

43

also be alleged and shown that the prison officials' conduct actually resulted in the complainant's inability to proceed in Court.

Based upon a thorough review of the record, the undersigned finds that Plaintiff has failed to allege any facts which suggest that Defendants' conduct has deprived him of access to the Courts, *i.e.*, that he has suffered any harm or prejudice as a result of the alleged restricted or delayed access to his legal mail. Plaintiff merely complains that Defendants delayed his legal mail. Plaintiff does not allege that he was actually prevented from meeting deadlines, or otherwise prejudiced in any pending litigation. Plaintiff merely complains that he "struggles daily to meet Court deadlines and requirements." The undersigned, therefore, has thoroughly reviewed the record and is unable to find any allegation or indication of actual injury resulting from Defendants' alleged act of delaying Plaintiff's legal mail. To the extent Plaintiff is requesting injunctive relief, such a request is now moot as Plaintiff is no longer incarcerated at FCI Beckley. Accordingly, the undersigned respectfully recommends that Defendants' "Renewed Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" be granted as to Plaintiff's claim that Defendants tampered with his mail and denied him access to the courts.

**8.    Administrative Remedy Process:**

In his sworn Complaint, Plaintiff alleges that Defendant Akers has violated his constitutional rights by rendering the BOP's Administrative Remedy process unavailable by refusing to provide appropriate forms. (Document No. 2-1, p. 20.) In their Renewed Motion, Defendants deny that Defendant Akers interfered with Plaintiff's attempts to exhaust his administrative remedies. (Document No. 91, p. 7 and Document No. 45, p. 24.) Defendants further argue that "[e]ven if true, it does not state a constitutional claim as there is no constitutional right

44

to a grievance procedure." (Document No. 91, p. 7.) In response, Plaintiff continues to argue that Defendant Akers interfered with his attempts to exhaust his administrative remedies in violation of his constitutional rights. (Document No. 56, 57, and 97.)

Federal inmates have no constitutional right to participate in the BOP's administrative grievance proceedings. See Adams v. Rice, 40 F.3d 72, 75 (4th Cir.), cert. denied, 514 U.S. 1022, 115 S.Ct. 1371, 131 L.Ed.2d 227 (1994); also see Booker v. South Carolina Dept. of Corrections, 855 F.3d 533 (4th Cir. 2017)("*Adams* establishes a clear rule: inmates have no constitutional entitlement or due process interest in access to a grievance procedure."); Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991)("[T]he federal regulations providing for an administrative remedy procedure do not in and of themselves create a liberty interest in access to that procedure. When the claim underlying the administrative grievance involves a constitutional right, the prisoner's right to petition the government for redress is the right of access to the courts, which is not compromised by the prison's refusal to entertain his grievance.") A BOP employee's refusal to respond to an inmate's administrative complaint, or conduct that otherwise prevents an inmate from pursuing such complaints through the administrative remedy process, making the process unavailable, is not actionable under Bivens. Rather, the legal consequence of conduct which makes the administrative remedy process unavailable to inmates is that the door to federal Court is open to proceedings on the merits of their claims without requiring their exhaustion of administrative remedies. Thus, an inmate does not have a constitutional entitlement to or a due process interest in accessing a grievance procedure. Accordingly, the undersigned finds that Plaintiff's claim that Defendant Akers violated his constitutional rights by rendering the BOP's Administrative Remedy process unavailable should be dismissed. Accordingly, the undersigned respectfully recommends

that Defendants' "Renewed Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" be granted as to Plaintiff's claim that Defendant Akers interfered with his attempts to exhaust his administrative remedies.

**9.** **Deliberate Indifference by Defendants Weaver, Akers, and Snow:**

In his sworn Complaint, Plaintiff contends that Defendants Akers, Snow, and Weaver were aware of the audio torture, but failed to take any corrective action. (Document No. 2-1, pp. 20 – 22, 25.) As to Defendants Akers, Snow, and Smith, Plaintiff alleges that each observed the playing of the music/soundtrack and laughed along with the other Defendants playing the music. (Id.) Although Plaintiff states that he requested Defendant Akers and Snow to "help" him, Defendants Akers and Snow failed to take any action to stop the playing of the music/soundtrack. (Id.) As to Defendant Weaver, Plaintiff alleges that Defendant Weaver made a false psychological diagnosis to cover up abuse. (Id., pp. 21 - 22.) Plaintiff alleges that "from the onset of the conspiracy to torture me, I have begged Dr. Weaver to help me." (Id., p. 21.) Plaintiff alleges that instead of helping him, Defendant Weaver diagnosed Plaintiff with psychosis and informed Plaintiff that he was hearing things because there was no music playing in his cell. (Id.) Plaintiff states that initially Defendant Weaver would stop by Plaintiff's cell on a weekly basis to inquire as to whether Plaintiff as still hearing things. (Id.) Plaintiff states that on July 21, 2015, he convinced Defendant Weaver to go to the SHU Office to investigate the alleged music. (Id.) Plaintiff states that the music was played for Defendant Weaver and Defendant Weaver left the SHU Unit "in shock." (Id., pp. 21 – 22.) Plaintiff complains that "from that moment, Dr. Weaver refused to see me again even though I requested the Chief Psychologist (Dr. Card) to inform him I was asking for him." (Id.)

In their Renewed Motion, Defendants contend that Plaintiff has failed to state a

46

constitutional claim against Defendants Akers, Snow, Smith, and Weaver. (Document No. 91, p. 8 and Document No. 45, p. 26.) Defendants first argue that Plaintiff's claim must be dismissed because he "only pleads the label of bystander liability without any factual basis as required by Twombly." (Document No. 91, p. 8.) Next, Defendants argue that Plaintiff claim should be dismissed because "there was nothing occurring that required intervention." (Document No. 45, p. 28.) As to Defendant Weaver, Defendants further state that Plaintiff has failed to state a constitutional claim of deliberate indifference because Plaintiff does not claim that he was denied needed medical care. (Document No. 91, p. 8.) Defendant Weaver states that he never made up a psychological diagnosis to cover up an alleged scheme to torture Plaintiff. (Document No. 45, p. 26.) Finally, Defendant Weaver explains that Plaintiff's diagnosis of malingering, and other diagnosis, were made by other mental health providers prior to Plaintiff's arrival at FCI Beckley. (Id.)

In response, Plaintiff continues to argue that Defendants Akers, Snow, Smith, and Weaver were deliberately indifferent to his safety in violation of the Eighth Amendment. (Document No. 56 and 97.)

Plaintiff alleges that Defendants Akers, Snow, Smith, and Weaver were deliberately indifferent to his safety in violation of the Eighth Amendment. Specifically, Plaintiff contends that the foregoing Defendants acted with deliberate indifference in failing to intervene to protect him from the audio torture used by fellow correctional officers. "The deliberate indifference standard generally applies to cases alleging failures to safeguard the inmate's health and safety, including failing to protect inmates from attack, maintaining inhumane conditions of confinement, or failing to render medical assistances." Thompson, 878 F.3d at 97(citing Farmer, 511 U.S. at 834, 114

47

S.Ct. at 1970). To establish deliberate indifference, an inmate must allege and prove (1) that he or she was exposed to "a substantial risk of serious harm" and (2) the prison official knew of and disregarded that substantial risk to the inmate's health or safety. Id. For the same reasons explained in Section 3(A) above, the undersigned cannot find that the alleged audio torture exposed Plaintiff to a substantial risk of serious harm. Thus, Plaintiff cannot establish that Defendants Akers, Snow, and Weaver were deliberately indifferent to his safety in violation of the Eighth Amendment. To the extent Plaintiff alleges that Defendant Weaver violated his constitutional rights by falsely or incorrectly diagnosing Plaintiff with psychosis, Plaintiff's claim fails to establish deliberate indifference. Even assuming there was a misdiagnosis, such is insufficient to establish deliberate indifferent. In Johnson v. Quinones, 145 F.3d 164 (4th Cir. 1998)(finding that a misdiagnosis is insufficient to establish deliberate indifference); Burt v. Tarpley, 2017 WL 1397953, * 3 (E.D.Va. April 17, 2017)("[T]o the extent that plaintiff asserts that the conclusion that he suffered from nasal congestion was a 'false diagnosis,' it is settled that "an incorrect diagnosis is not deliberate indifference.") In the instant case, there is no evidence that Defendant Weaver knew Plaintiff was suffering from a mental health condition and deliberately disregarded or failed to treat such. At most, Defendant Weaver may have been negligent in properly diagnosing Plaintiff's alleged mental health condition. It is well recognized, however, that a "negligence medical diagnoses or treatment, without more, do not constitute deliberate indifference." Webb v. Hamidullah, 281 Fed.Appx. 159, 166 (4th Cir. 2008); also see Sosebee v. Murphy, 797 F.2d 179, 181 (4th Cir. 1986)("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment."). Viewing the facts in a light most favorable to Plaintiff, the undersigned finds that Plaintiff's

allegations fail to establish that Defendants Akers, Snow, Smith, and Weaver were deliberately indifferent to Plaintiff's safety in violation of the Eighth Amendment. Accordingly, the undersigned respectfully recommends that Defendants' "Renewed Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" be granted as to Plaintiff's claim that Defendants Akers, Snow, and Weaver were deliberately indifferent to Plaintiff's safety by failing to intervene.

**10.    Revocation of IFP Status:**

In their Renewed Motion, Defendants argue that Plaintiff's IFP status should be revoked. (Document No. 90 and Document No. 45, pp. 30 – 32.) Defendants argue that Plaintiff is a "frequent filer" in federal court having filed at least ten cases. (Id., p. 30.) Defendants note that a review of the docket sheets in those cases reveal that Plaintiff has never paid a filing fee. (Id.) Defendants state that "[w]hile it is unclear whether Plaintiff has had enough cases dismissed for the three strike provision under the PLRA, it certainly appears Plaintiff has filed frivolous actions." (Id.) Defendants argue that the Court has discretionary authority to grant or deny IFP status, and "the court may deny IFP status to a prisoner even without three strikes under the PLRA." (Id.) Defendants argue that Plaintiff intentionally remains indigent and "Plaintiff should not be allowed to continue to avoid the spirit of the PLRA by intentionally remaining indigent so he can file frivolous claims at no cost." (Id.) Defendants further state that Plaintiff's "unbelievable and bizarre claims are clearly false and an abuse of the IFP privilege." (Id., p. 31.) Thus, Defendants request that this Court "withdraw IFP status from Plaintiff and require him to pay the filing fee in full before consideration of these false claims." (Id.)

In response, Plaintiff argues that his IFP status should not be revoked. (Document No. 56, p. 11.) Plaintiff states that "not a single lawsuit filed by me has been dismissed for being frivolous

or failure to state a claim, or for being malicious." (Id.) Plaintiff states that "there has been no misconduct other than that of Defendants and AUSA Horn." (Document No. 97, p. 5.) Therefore, Plaintiff argues that Defendants' request should be denied. (Id.)

The PLRA contains a provision known as the "Three Strikes Rule." See 28 U.S.C. § 1915(g). The Three Strikes Rule restricts the right to proceed without payment of the filing fee for prisoners who repeatedly file meritless claims. Specifically, Section 1915(g) provides as follows:

> In no event shall a prisoner bring in a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g). The Three Strikes Rule should only be used to denying a prisoner's IFP status "when, after careful evaluation of the order dismissing an action, and other relevant information, the district court determines that the action was dismissed because it was frivolous, malicious or failed to state a claim." Andrews v. King, 398 F.3d 1113, 1121 (9th Cir. 2005).

Although Defendants argue that Plaintiff is a "frequent filer," Defendants do not argue that that Plaintiff has previously filed three or more civil actions that have been dismissed as frivolous, malicious, or for failure to state a claim. Plaintiff denies that he has ever had any action dismissed as frivolous, malicious, or for failure to state a claim. Importantly, Defendants conclude that this Court should withdraw Plaintiff's IFP status because Plaintiff's "unbelievable and bizarre claims are clearly false and an abuse of the IFP privilege." The undersigned declines to make a credibility finding when determining whether IFP status should be granted. Furthermore, the Court appropriately screened Plaintiff's complaint pursuant to 28 U.S.C. § 1915A when granting Plaintiff's IFP status in this case. (Document No. 6.) Thus, the Court determined that Plaintiff's

Complaint as a whole was not frivolous, malicious or failed to state a claim upon which relief could be granted. Therefore, the undersigned respectfully recommends that the District Court deny Defendants' request that Plaintiff's IFP status be revoked.

## PROPOSAL AND RECOMMENDATION

Based upon the foregoing, it is therefore respectfully **PROPOSED** that the District Court confirm and accept the foregoing factual findings and legal conclusions and **RECOMMENDED** that the District Court **GRANT in part and DENY in part** Defendants' "Renewed Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 90). Specifically, the undersigned recommends that Defendants' Renewed Motion be (1) **DENIED** as to Plaintiff's alleged failure to exhaust administrative remedies; (2) **DENIED** as to Plaintiff's claim of excessive force against Defendant Coleman and Defendant Harvey; (3) **DENIED** as to Defendants' request for Plaintiff's IFP status be revoked; and (4) **GRANTED** as to Plaintiff's claim of conspiracy, audio torture, food tampering, verbal abuse, sexual harassment, invasion of privacy, mail tampering/access to court, violation of the administrative remedy process, and failure to intervene.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Irene C. Berger. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen (14) days (filing of objections) and three (3) days (if received by mail) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Berger and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Plaintiff, who is acting *pro se*, and transmit a copy to counsel of record.

Date: January 30, 2018.

Omar J. Aboulhosn
United States Magistrate Judge