# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
### BECKLEY DIVISION

WILLIAM C. PUMPHREY,

      Plaintiff,

v.                                    CIVIL ACTION NO.   5:15-cv-14430

JOE COAKLEY, et al.,

      Defendants.

## MEMORANDUM OPINION AND ORDER

The Court has reviewed the *Proposed Findings and Recommendation* (PF&R) (Document 106), filed by the Honorable Omar J. Aboulhosn, United States Magistrate Judge, and the Defendants' *Limited Objections to the Proposed Findings and Recommendation of the United States Magistrate Judge* (Document 107).   For the reasons stated herein, the Court finds that the Defendants' objections should be overruled, and the Magistrate Judge's PF&R adopted.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The Magistrate Judge provided a thorough summary of the alleged facts and procedural history in this case in his PF&R.   The Court adopts the statement of facts and procedural history set forth in the PF&R, but provides the following as a concise summary.   The Plaintiff, then an inmate at Federal Correctional Institution-Beckley (FCI-Beckley), initiated this action with the filing of a *Complaint* (Document 2) on October 28, 2015.   The Plaintiff raised a number of claims for violation of his constitutional and civil rights under *Bivens v. Six Unknown Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).   The Plaintiff named a number of FCI-Beckley employees as defendants, and asserted that the Warden orchestrated a scheme, perpetuated by the

other defendants, to systematically torture him by using secret, hidden devices to pump "irritating, nonsensical music" into his cell in the FCI-Beckley Special Housing Unit (SHU). (Pl.'s Compl., at 4-5.) The Plaintiff contended that the music increased his anxiety and "exacerbated serious pre-existing health issues." (*Id*. at 5.) The Plaintiff further maintains that FCI-Beckley staff have harassed him by banging and kicking his cell door. The Plaintiff alleges that because of this harassment, he grinds his teeth compulsively and has lost numerous fillings, and also suffered from headaches. The Plaintiff also alleges that the Defendants have endangered his life, by spreading false rumors that he is a child molester, and caused him mental anguish, by making sexual overtures to him in the shower. Finally, the Plaintiff maintains that Defendant B. Coleman struck him without provocation, resulting in swelling and bruising, and that other Defendants have verbally threatened him, intentionally injured him when placing him in restraints, and, when pushing him in a wheelchair, have purposefully rammed other objects in order to cause him injury.

The United States filed the *Defendants Motion to Dismiss, or in the Alternative for Summary Judgment* (Document 44) on February 12, 2016. The United States made four core arguments: (1) that the Plaintiff failed to properly exhaust his administrative remedies; (2) that the Plaintiff failed to state a claim for relief on any of his allegations, (3) that the Plaintiff could not recover emotional or psychological damages without a showing of physical injury, and (4) that the Defendants were entitled to qualified immunity. (Def. Mot. to Dismiss, at 1-2.)

On July 18, 2016, the Magistrate Judge submitted his PF&R, recommending that the Court grant the motion of the United States, and dismiss the case from the docket. The Magistrate Judge found that the Plaintiff had failed to exhaust his administrative remedies, as required by the Prison Litigation Reform Act (PLRA), 42 U.S.C. §1997e(a). (PF&R, at 15.) The Plaintiff filed his

objections to the PF&R on July 28, 2016. In its September 7, 2016 *Memorandum Opinion and Order* (Document 70), this Court adopted the Magistrate Judge's PF&R and granted the *Defendants' Motion to Dismiss, or in the Alternative for Summary Judgment* (Document 44). The Plaintiff filed his *Notice of Appeal* (Document 74) on September 14, 2016, and on April 11, 2017, the United States Court of Appeals for the Fourth Circuit issued its *Opinion* (Document 81) finding that the Court made inappropriate credibility determinations in granting the Defendants' motion to dismiss, reversing this Court's order adopting the Magistrate Judge's PF&R, and remanding the case for further proceedings. The Fourth Circuit issued the *Mandate* (Document 92) returning the case to this Court on June 5, 2017.

On June 5, 2017, the Defendants' filed their *Renewed Motion to Dismiss, or in the Alternative for Summary Judgment* (Document 90). In their motion, the Defendants, again, argued that the Plaintiff failed to exhaust his administrative remedies, and also that his claim of torture, his claim of excessive force by Officer Coleman, and his other constitutional claims failed to state a claim for relief. The Defendants further argued that the Plaintiff may not recover emotional or psychological damages without a showing of physical injury, that the Defendants are entitled to qualified immunity, and that the Court should revoke the *Plaintiff's in forma pauperis* status based on his litigious misconduct. On June 19, 2017, the Plaintiff filed his *Affidavit Response and Objection to Defendants' Renewed Motion to Dismiss or, in the Alternative, for Summary Judgment* (Document 97).

On January 30, 2018, the Magistrate Judge submitted his PF&R, recommending that the Defendants' renewed motion be granted in part and denied in part. The Magistrate Judge specifically recommended that the Defendants' motion should be denied to the extent it asserts

that the Plaintiff failed to exhaust administrate remedies, as to the request to revoke the Plaintiff's *in forma pauperis* status, and as to the Plaintiff's claims for excessive force against Defendants Coleman and Harvey. The Magistrate Judge found that the Court would have to undertake credibility determinations, in contravention of the Fourth Circuit's opinion, and that these claims should, therefore, proceed to the discovery process. However, the Magistrate Judge recommended that the Court grant the Defendants' motion as to the Plaintiff's claims of conspiracy, audio torture, food tampering, verbal abuse, sexual harassment, invasion of privacy, mail tampering/access to court, violation of the administrative remedy process, and failure to intervene. (PF&R, at 51.) The Defendants filed their limited objections to the PF&R on February 8, 2018, and those objections are ripe for review.

## STANDARD OF REVIEW

### A. *Objections to PF&R*

This Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). However, the Court is not required to review, under a de novo or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). In addition, this Court need not conduct a de novo review when a party "makes general and conclusory objections that do not direct the Court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). When reviewing portions of the PF&R de novo, the Court will consider the fact that the Petitioner is acting *pro se*,

and his pleadings will be accorded liberal construction.  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978).

### B.  Summary Judgment

The well-established standard for consideration of a motion for summary judgment is that summary judgment should be granted if the record, including the pleadings and other filings, discovery material, depositions, and affidavits, "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a)–(c); see also *Hunt v. Cromartie*, 526 U.S. 541, 549 (1999); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Hoschar v. Appalachian Power Co.*, 739 F.3d 163, 169 (4th Cir. 2014).  A "material fact" is a fact that could affect the outcome of the case.  *Anderson*, 477 U.S. at 248; *News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010).  A "genuine issue" concerning a material fact exists when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor.  *FDIC v. Cashion*, 720 F.3d 169, 180 (4th Cir. 2013).

The moving party bears the burden of showing that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp.*, 477 U.S. at 322–23.  When determining whether summary judgment is appropriate, a court must view all of the factual evidence, and any reasonable inferences to be drawn therefrom, in the light most favorable to the nonmoving party.  *Hoschar*, 739 F.3d at 169.  However, the nonmoving party must satisfy its burden of showing a genuine factual dispute by offering more than "[m]ere speculation" or a "scintilla of evidence" in support of its position.  *Anderson*, 477 U.S. at 252; *JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).  If disputes

over a material fact exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," summary judgment is inappropriate. *Anderson*, 477 U.S. at 250. On the other hand, if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case," then summary judgment should be granted because "a complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322–23.

## APPLICABLE LAW

*Bivens v. Six Unknown Federal Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), provides a legal framework for alleging constitutional violations against federal officials. For purposes of the Defendants' objections to the PF&R, Mr. Pumphrey asserts violations of his Eighth Amendment right to be free from cruel and unusual punishment.

### A. *Ziglar v. Abbasi*

The Supreme Court recently clarified the analysis courts should perform when addressing *Bivens* claims in *Ziglar v. Abbasi*, 137 S.Ct. 1843 (2017). That case involved claims by non-citizens detained pre-trial in the United States during the course of the investigation into the September 11, 2011 terrorist attacks, who had since been released and removed from the United States. The plaintiffs brought claims against top officials in the Executive Branch, including the attorney general, the head of the FBI, and the Immigration and Naturalization Service Commissioner, and against the warden and associate warden at the detention center. They alleged violations of both the due process and the equal protection components of the Fifth Amendment based on the harsh conditions of confinement, abuse by guards, and mistreatment based on race, religion, or national origin, and unjustified strip searches in violation of the Fourth Amendment.

6

The Supreme Court cautioned courts against engaging too readily in the "disfavored" judicial activity of expanding the *Bivens* remedy absent Congressional direction. *Ziglar v. Abbasi*, 137 S.Ct. 1843, 1857 (2017). The Court set forth the following "test for determining whether a case presents a new *Bivens* context:"

> If the case is different in a meaningful way from previous *Bivens* cases decided by this Court, then the context is new. Without endeavoring to create an exhaustive list of differences that are meaningful enough to make a given context a new one, some examples might prove instructive. A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Id.* at 1859–60. Where a case does present a new context, the *Bivens* remedy should not be expanded "if there are 'special factors counselling hesitation in the absence of affirmative action by Congress.'" *Id.* at 1857 (citing *Carlson v. Green*, 446 U.S. 14, 18 (1980) and *Bivens*, 403 U.S. at 397). The special factors "inquiry must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Id.* at 1857-58.

## B. Eighth Amendment

The standard for Eighth Amendment claims involving excessive force recognizes that use of force is sometimes necessary to maintain order in the prison context. The United States Supreme Court held in 1992 that the "core inquiry" in excessive force cases is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). It specified that the bar on cruel and

unusual punishment "necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Id.* at 9–10 (internal quotation marks omitted). The Supreme Court has explained that its decision in *Hudson* did not set an injury threshold for excessive force claims, but instead "shift[ed] the core judicial inquiry from the extent of the injury to the nature of the force— specifically, whether it was nontrivial and was applied maliciously and sadistically to cause harm." *Wilkins v. Gaddy*, 559 U.S. 34, 39 (2010) (per curiam) (internal quotation marks and punctuation omitted). The Fourth Circuit has since held that, in light of *Wilkins*, "there is no *de minimis* injury threshold for an excessive force claim." *Hill v. Crum*, 727 F.3d 312, 316 (4th Cir. 2013). Thus, although every encounter with a prison guard will not rise to the level of a federal cause of action under the Eighth Amendment, "[a]n inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins*, 559 U.S. at 38.

The Fourth Circuit has prescribed four factors to be balanced in determining whether force was applied maliciously and sadistically to cause harm:

> (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of any reasonably perceived threat that the application of force was intended to quell; and (4) any efforts made to temper the severity of a forceful response.

*Iko v. Shreve*, 535 F.3d 225, 239 (4th Cir. 2008) (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)).

### C. Qualified Immunity

The Defendants each assert a defense of qualified immunity. Qualified immunity is an affirmative defense intended to shield public officials from civil suits arising out of their

performance of job-related duties. *See, e.g., Pearson v. Callahan*, 555 U.S. 223, 231–32 (2009).

Defendants asserting a qualified immunity defense first bear the burden of "demonstrating that the

conduct of which the plaintiff complains falls within the scope of the defendant's duties." *In re

Allen*, 106 F.3d 582, 594 (4th Cir. 1997) (internal quotation marks omitted.) The defense of

qualified immunity is available unless the official "knew or reasonably should have known that

the action he took within his sphere of official responsibility would violate the constitutional rights

of the plaintiff…." *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982) (internal emphases omitted).

Officials are protected even if they make reasonable mistakes of fact or law, so long as they do not

violate a clearly established statutory or constitutional right. *Pearson*, 555 U.S. at 231–32. "A

constitutional right is 'clearly established' when its contours are sufficiently clear that a reasonable

official would understand that what he is doing violates that right." *Cooper v. Sheehan*, 735 F.3d

153, 158 (4th Cir. 2013) (internal quotation marks and citations omitted). Courts are advised to

"ask first whether a constitutional violation occurred and second whether the right violated was

clearly established."[1]  *Id.*

## DISCUSSION

Both Defendant Coleman and Defendant Harvey argue in their objections that the

Plaintiff's Eighth Amendment excessive force claims should not be extended under *Bivens* and

that they are entitled to qualified immunity. Defendant Coleman argues that the Magistrate Judge

misapplied the summary judgment standard regarding the Plaintiff's excessive force claim against

him. Defendant Harvey contends that the excessive force claim against him does not specify

---

1 "Courts are 'permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.'" *Smith v. Ray*, 781 F.3d 95, 106, fn 3 (4th Cir. 2015) (citing *Pearson v. Callahan,* 555 U.S. 223, 236 (2009)).

enough information for him to put forth a defense.   Finally, both Defendants Coleman and Harvey argue that the Court should invoke its discretionary authority to revoke the Plaintiff's IFP status.

### A.   *Bivens Expansion*

Defendants Coleman and Harvey argue that the Court should decline any expansion of the *Bivens* remedy under the "special factors" analysis set forth in *Abbasi*, contending that the Plaintiff's Eighth Amendment excessive force claims against them do not fall within the Supreme Court's three previously recognized *Bivens* causes of action.   Both Defendants further argue that there are alternative remedies available, and that special factors are present which counsel hesitation such that this Court's power to infer a new cause of action is limited.

The Court finds that Mr. Pumphrey's claims do not involve an expansion of the *Bivens* remedy.   Mr. Pumphrey claims that both Defendants Coleman and Harvey intentionally injured him. He alleges that Defendant Coleman entered his cell and struck him in the face, and that Defendant Harvey put handcuffs on him in a rough manner and intentionally pushed his lower extremities into walls and other objects while Pumphrey was in his wheelchair.   These excessive force claims against Mr. Coleman and Mr. Harvey involve direct Eighth Amendment allegations against two individual officers for specific actions taken against an individual inmate.   Based on the Supreme Court's examination of an Eighth Amendment cruel and unusual punishment claim and its finding that a damages remedy was appropriate in *Carlson v. Green*, 446 U.S. 14 (1980), the Plaintiff's similar direct Eighth Amendment claim here is not a *Bivens* expansion.   However, even if this case were considered a *Bivens* expansion based on the minor differences in fact between it and *Carlson*, [2] the Court finds appropriate the limited expansion necessary to

---

2 The Plaintiff in *Carlson*, a mother representing her deceased son's estate who died while in federal prison, alleged that prison staff violated her son's Eighth Amendment right from cruel and unusual punishment by failing to give him

incorporate cases of this nature given the claims of direct and specific excessive force allegations under the Eighth Amendment. Neither of the Plaintiff's claims at issue in the Defendants' objections implicate policy or policy-making officials, and both are the type of claims that are frequently litigated in the prison context. These claims of direct and specific excessive force are frequently litigated and well-suited to judicial consideration, even absent congressional action. The Court therefore finds that the Plaintiff's excessive force claims under the Eighth Amendment do not involve a *Bivens* expansion, and even if they did, there is no indication that congressional action is necessary to determine whether a *Bivens*-type remedy is available here. The objections should therefore be overruled.

### B. *Qualified Immunity*

Both Defendants Coleman and Harvey next object to the PF&R on the grounds that they are entitled to qualified immunity. In their objections, however, they simply argue that qualified immunity is appropriate because the *Bivens* cause of action may not exist for Eighth Amendment claims of excessive force. Thus, both Defendants contend that qualified immunity must shield them from suit.

As previously stated, however, the Plaintiff's excessive force claims do not constitute an expansion of the *Bivens* remedy. Further, and regardless of the *Bivens* expansion issue, the Court finds that the Defendants have not shown that they are entitled to qualified immunity. Regarding the first question in a qualified immunity analysis, whether the Plaintiff had a clearly established right, the Defendants do not object to or assert an argument against the Magistrate Judge's finding that the Plaintiff's constitutional right not to be subjected to excessive force was clearly

---

proper medical attention and treat his asthma. *Carlson*, 466 U.S. at 16.

established. Nor do the Defendants specifically argue in their objections that no constitutional violation occurred. Defendant Coleman does argue in his objection to the summary judgment standard that there is no genuine issue of material fact regarding his access to the Plaintiff's cell. As the Court will explain below, however, such a finding turns on a credibility determination regarding the Plaintiff's allegations which the Court cannot make at this stage. Both Mr. Coleman and Mr. Harvey present no real argument here regarding how they have established qualified immunity, and merely rely on their argument that qualified immunity should be found because *Bivens* should not be expanded in this case. Therefore, the Defendants' objections on qualified immunity should be overruled.

### C. Defendant Coleman's Summary Judgement Standard Argument

Defendant Coleman objects to the Magistrate Judge's finding that there are genuine issues of material fact regarding the Plaintiff's allegations. Mr. Coleman contends that he has presented objective evidence proving that he did not and could not have entered the Plaintiff's cell and struck him in the face, while the Plaintiff has merely presented "self-serving allegations" that this alleged conduct occurred. (Defs.' Objections at 8.) Mr. Coleman argues that these self-serving allegations are not enough to proceed past his supplied objective evidence under the summary judgment standard, and summary judgment regarding his claim should therefore be granted.

As previously stated, summary judgment should be granted only if the record, including the pleadings and other filings, discovery material, depositions, and affidavits, "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a)–(c); see also *Hunt v. Cromartie*, 526 U.S. 541, 549 (1999); *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Hoschar v. Appalachian Power Co.*, 739 F.3d 163, 169 (4th Cir. 2014).

The Court finds that the Magistrate Judge applied the appropriate standard.   In finding that there are genuine issues of material fact such that the case should proceed to the discovery phase, the Magistrate Judge noted that "Defendant Coleman is clearly requesting that this Court make a credibility determination as to an issue of material fact."   (PF&R at 29.)   Through his objections, Mr. Coleman again asks the Court to overrule the Magistrate Judge and find that summary judgment is appropriate because the Plaintiff's sworn statements are allegedly false.   As the Fourth Circuit cautioned, however, in reviewing a motion for summary judgment, it is not the Court's job to determine whether the Plaintiff's statements are true, or whether the Plaintiff is less credible.   Nor is it "[the Court's] job to weigh the evidence, to count how many affidavits favor the Plaintiff and how many oppose him, or to disregard stories that seem hard to believe."   *Gray v. Spillman*, 925 F.2d 90, 95 (4th Cir. 1991).   Thus, the Magistrate Judge appropriately applied the applicable standard in finding that an issue of material fact remains based on the Plaintiff's statements, and Mr. Coleman's objection should be overruled.

### D.   Defendant Harvey's Objection

Next, Mr. Harvey objects to the Magistrate Judge's finding that the Plaintiff's excessive force claim against him should go forward.   Mr. Harvey asserts that the Plaintiff has failed to state sufficient facts in his claim that allow Mr. Harvey to respond or assert a defense, and it should thus be dismissed.   Again, the Court finds that the objection should be overruled because Mr. Harvey seeks to have the Court weigh the evidence.   The Magistrate Judge found that Mr. Harvey "acknowledges that 'he would have pushed Plaintiff in his wheelchair during cell moves and other

times, but never intentionally rammed him into anything.'" (PF&R, at 33.) The Magistrate Judge appropriately found that he was not in a position to give Mr. Harvey's declaration more weight than the Plaintiff's statements or determine which statements are true or false. Mr. Harvey's objections that the Plaintiff's allegations are so threadbare that he cannot even present evidence to the contrary are tenuous when he indeed submitted evidence in conjunction with his motion to dismiss or for summary judgment that the Plaintiff's allegations were false. Therefore, the Court finds that the Magistrate Judge's findings on the claim against Mr. Harvey were appropriate and the objections should be overruled.

### E. Revocation of the Plaintiff's IFP Status

Finally, the Defendants object to the Magistrate Judge's decision to deny their request to revoke the Plaintiff's *in forma pauperis* (IFP) status. Although the Defendants concede that the Plaintiff has not had enough cases dismissed on frivolous grounds to satisfy the three strike rule, they assert that the Court should use its discretionary authority to revoke the Plaintiff's IFP status because he has a "long documented history of fabricating events," and because he filed this claim alleging that an elaborate system of devices played sounds in his cell on a regular basis that amounted to torture while he was the only person who ever heard the sounds. (Defs.' Objections, at 12.) The Defendants argue that the Plaintiff "should not be allowed to abuse the court system and harass law enforcement professionals without cost to him," and therefore contend that his IFP status should be revoked. (*Id.*)

Pursuant to the Prisoner Litigation Reform Act (PLRA) provision known as the "Three Strike Rule," an inmate loses the ability to proceed in civil suits without paying the filing fee "if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility,

14

brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous . . . ." 28 U.S.C. § 1915(g). Here, the Defendants have conceded that the Plaintiff has not satisfied the elements of the Three Strike Rule. Further, regardless of whether the Plaintiff's remaining allegations are true or not, (a finding this Court is not in a position to make at this stage of the litigation), the Magistrate appropriately screened the Plaintiff's complaint and found that it was not frivolous or malicious. Having presented no evidence to the contrary in their objections regarding the Plaintiff's IFP status, the objections should be overruled.

## CONCLUSION

WHEREFORE, after careful consideration, the Court **ORDERS** that the Defendants' *Limited Objections to the Proposed Findings and Recommendation of the United States Magistrate Judge* (Document 107) be **OVERRULED** and that the Magistrate Judge's Proposed Findings and Recommendation (Document 106) be **ADOPTED**. The Court further **ORDERS** that the Defendants' *Renewed Motion to Dismiss, or in the Alternative for Summary Judgment* (Document 90) be **GRANTED** in part and **DENIED** in part. Specifically, the Court **ORDERS** that the Defendants' *Renewed Motion* is **GRANTED** as to the dismissal of the Plaintiff's claims of conspiracy, audio torture, food tampering, verbal abuse, sexual harassment, invasion of privacy, mail tampering/access to court, violation of the administrative remedy process, and failure to intervene, and **DENIED** as to (1) the Plaintiff's alleged failure to exhaust administrative remedies, (2) dismissal of the Plaintiff's claim of excessive force against Defendants Coleman and Harvey, and (3) the Defendants' request to revoke the Plaintiff's IFP status.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER:      March 16, 2018

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA